## WILLIAMSON v. THE CITY OF KEOKUK.

1. **Municipal Corporations :** SUBSCRIPTION TO RAILWAY STOCK: CHARTER OF KEOKUK. The act amending the charter of the city of Keokuk, approved January 22, 1853, did not confer upon the city the power to become a subscriber to the capital stock of a railway company.

2. ———: ISSUANCE OF BONDS. The act of January 25, 1855, did not contain a grant of power to municipal corporations to issue bonds in aid of railway companies, but simply attached certain limitations to the exercise of the power where it had already been conferred.

3. **Constitutional Law :** TITLE OF STATUTE. A statute designated in its title as an amendment to a city charter, but which embraces objects foreign to the charter, is in conflict with the constitution and void.

4. **Municipal Corporations :** ILLEGAL BONDS. Bonds issued *ultra vires* are not legalized by Chapter 258, Acts of 1857, which seeks simply to cure the effects of irregular submission of the question of their issuance to the vote of the people.

5. ———: BONDS: INNOCENT HOLDER. Municipal bonds issued by corporations not having the power to issue, are absolutely void, even in the hands of an innocent purchaser for value.

*Appeal from Lee District Court.*

THURSDAY, SEPTEMBER 21.

THIS is an action founded upon coupons of certain railroad bonds issued by the city of Keokuk to the Keokuk, Fort Des Moines & Minnesota Railroad Company, January 1, 1856, in pursuance of two elections held on the 7th day of January, 1854, and on the 17th day of October, 1855, respectively. A copy of one of the bonds is attached to the petition as an exhibit, and it recites that, "it was issued under an ordinance of the city of Keokuk, providing for the subscription to the capital stock of the Keokuk, Fort Des Moines & Minnesota Railroad Company, passed on the 20th day of November, 1855, *under the authority* of an act of the General Assembly of the State of Iowa amending the .charter of said city, approved January 22, 1853."

The answer of defendant in substance, alleged a want of legal power in the city to issue the bonds, and also the uncon-

stitutionality of a certain act of the General Assembly passed in 1856, which attempted to legalize the said election, and the ordinance and acts of said city in regard to said bonds. The answer also alleges certain acts of the officers of the city and the officers of the railroad company, by which it is claimed said bonds were fraudulently issued. There was a demurrer to the answer, which was overruled, and plaintiff appeals.

*G. Browne* and *C. W. Lowrie*, for appellant.

*John Gibbons*, for appellee.

ROTHROCK, J.—I. The principal question raised by the pleadings, and discussed in argument is: "Did the city of Keokuk on the 1st day of January, 1856, under its charter and laws of the State, have the legal authority to issue bonds * * * and give the same for railroad stock; and if it did not then have such authority, has the legislature since legalized said bonds."

It may be proper to say that the parties do not raise the question as to the constitutional power of the legislature to authorize such issue of bonds, and passing that, we will consider the case as we have it presented to us.

The city of Keokuk was organized under a special act of the legislature, and the ordinance authorizing the issuance of 1. MUNICIPAL the bonds in question recites that the elections corporations: subscription were held in pursuance of an act of the General to railway stock: char-ter of Keo-kuk. charter of the city of Keokuk, approved January 22, 1853. As the power to hold said elections and vote said bonds is thus based on the act aforesaid, it will not be claimed that any power existed by virtue of the original charter. We may say, however, that there is no such power contained in the original charter, either express or that can properly be implied from any express provision. Section 31 of the original charter provides as follows: "The said city council whenever they think it expedient, shall have power by ordinance to borrow money on the credit of the city, provided it shall

not exceed $20,000, and also to appropriate money and to provide for the payment of all debts and expenses of the city."

The 17th section of the act of 1853 is as follows: "The provisos of sections 26 and 31 of the act to which this is an amendment, '(the original charter)' and all such portions of said act as are repugnant to the provisions of this act are hereby repealed; provided, as to said thirty-first section that no debt above the amount authorized by said thirty-first section shall be incurred by said council, unless the question of contracting the same shall first be submitted to the people of said city in the same manner as provided in the first section of this act."

It is claimed by appellant that this is a repeal of so much of the original charter as limited the indebtedness to twenty thousand dollars, and leaves it without any limit as to the amount or character of the debt, provided the question of incurring such indebtedness be submitted to a vote of the people.

We fail to see any power conferred by this act to enable the city to become a subscriber to the capital stock of a railroad company. We must presume that the indebtedness contemplated was for municipal purposes only.

The cases of *Gelpcke v. The City of Dubuque*, 1 Wallace, 175, and *Myer v. The City of Muscatine, Ib.*, 384, relied on by appellant, are not in point. In the former case the power was expressly granted by an amendment to the charter of the city of Dubuque, and in the latter, the charter of the city of Muscatine authorized the city council, "*To borrow money for any object in its discretion, etc*," and the bonds recited that they were issued for money borrowed by the city—not as a subscription to the capital stock of a railroad company.

II. It is next insisted that the act of the legislature of January 25, 1855, Chap. 128, in connection with the charter and amendments aforesaid, empowered the city to issue the bonds in question. The first section of the act of 1855 enacted "that railroad companies might issue their bonds at such a rate of interest, and sell them at such

2. ——: issuance of bonds.

discount as might be necessary, and that they should remain legal and binding." The second section enacted, "that whenever any company shall have received, or may hereafter receive, the bonds of any city or county upon subscription of stock by such city or county, such bonds may bear interest at any rate not exceeding ten per cent, and may be sold by the company at such discount as may be deemed expedient."

In our judgment, this act cannot be held as a grant of power, or as assuming that any given city was authorized by any act of the legislature, to issue bonds in aid of railroad companies. It only applies to the bonds of such cities or counties, if any, as had the power in question conferred by the legislature, and this power or authority must exist, if at all, independent of the act. It is merely an act fixing the rate of interest and discount on railroad, and city, and county bonds, issued in aid of railroads.

III. Counsel for appellant do not allude in their argument to chapter 17, acts of 1856, entitled, "*An Act to amend the charter of the city of Keokuk.*" This act contains twenty-three sections. The first section extends the boundaries of the city over the several additions laid out by the owners of adjacent territory; the second has reference to the election, term of office, and duties of aldermen; the third gives the city exclusive right to make wharves; the fourth makes provision for filling vacant offices, etc.; the fifth establishes the recorder's court; the sixth and seventh provide for the election and qualification of recorder; the eighth, compensation of recorder; and the ninth recites in substance that elections had been held to determine whether the city council should subscribe certain sums to the stock of certain railroads, and enacts that the votes and acts of the city council were by the said act legalized.

*3. CONSTITU-TIONAL law: title of statute.*

It is claimed by the appellee that this ninth section is unconstitutional, being in conflict with Sec. 26, Art. III, Constitution of Iowa, 1846, which provides, "Every law shall embrace but one object, which shall be expressed in the title." We have no doubt that all of the provisions contained in the first eight sections of the act in question, although embracing

different subjects, are fairly expressed in the title. The object stated in the title is, " to amend the charter of the city of Keokuk," and all the provisions referred to are proper and legitimate amendments.

But the ninth section is in no sense an amendment of the charter. It is an attempt to legalize and make valid certain acts of the city council, and certain elections held by the people. This is neither embraced in the title of the act, nor is it germane to anything contained therein.

We are, therefore, clearly of the opinion that said ninth section is void. The statement of our conclusion on this branch of the case is sufficient, as the act in question does not seem to be relied on by appellant. *Tuscaloosa Bridge Co. v. Olmstead*, 41 Ala., 41; *The People v. Mellen*, 32 Ill., 181; *McWhirter v. Price*, 11 Ind., 199; *Ryerson v. Hetly*, 16 Mich., 269; *The People, ex rel., etc., v. Hillis*, 35 N. Y., 449.

IV. It is further urged by appellant that the bonds in question were legalized and made valid by chapter 258 of the acts of 1857. An examination of the provisions of this act shows that it does not purport to legalize generally bonds before issued by Lee and Davis counties and the cities and towns therein. Its provisions were simply intended to cure defects in the mode of submission and taking the vote. This is fully apparent from the whole chapter taken together. It seems to assume that the authority to vote such bonds existed, and hence it does not undertake to legalize an act done without such authority, but merely provides against the effects of an irregular or improper submission or vote. This, then, being the effect of the act, it does not legalize these bonds, which we have found were voted without any authority of law.

*4. MUNICIPAL corporations: illegal bonds.*

V. The only other question is, as to whether the plaintiff, being an innocent purchaser, is affected by the want of power in the city to issue these bonds. Finding, as we do, that no power was conferred upon the city to issue the bonds, by any act of the legislature, the conclusion must be that they are absolutely void, and all holders thereof

*5.———:bonds: innocent holder.*

are chargeable with notice of the want of legal power to issue the same.

The case is different from one where the power exists, but is irregularly exercised.

We have briefly alluded to all the points made in the case, following the line of the arguments of counsel; and, as before remarked, aside from any consideration of the question as to the constitutional power of the legislature to authorize the issuance of the bonds in question, we are led to the conclusion that the demurrer was properly overruled.

AFFIRMED.