Brockman v. The City of Creston.

BROCKMAN v. THE CITY OF CRESTON.

| 79 | 587 |
|---|---|
| 102 | 77 |
| 79 | 587 |
| 104 | 388 |
| 79 | 587 |
| 106 | 467 |
| 106 | 677 |
| 79 | 587 |
| 116 | 99 |
| 79 | 587 |
| 128 | 54 |
| 79 | 587 |
| f134 | 431 |

1. **Cities and Towns:** POWERS: DISPOSITION OF PUBLIC PROPERTY. A city has no power, either under section 470 of the Code, or under section 1, chapter 89, Laws of 1880, or under any other statute, to convey its real estate to the county in which it is located, in consideration of the location of the county-seat in such city. (Compare *District Township v. Thomas*, 59 Iowa, 50.)

2. ———— : UNLAWFUL DISPOSITION OF PROPERTY : INJUNCTION BY TAX-PAYER : GOOD FAITH : EXTENT OF INTEREST. Where a city is attempting to dispose of public property without authority of law, one who has property liable to taxation in the city may maintain an action to restrain such disposition, though he be not a resident of the city (see opinion for citations); and the court cannot inquire into his motives in prosecuting the action, nor deny him relief because his interest as a taxpayer is inconsiderable.

3. ———— : ———— : ———— : WHEN RIGHT OF ACTION MATURES. Plaintiff in such case need not defer his action until a tax has actually been levied upon his property by reason of the wrongful disposition of the property of the city, but may have the preventive remedy by injunction as soon as damage is threatened by the unlawful act.

4. ———— : ———— : REMEDY. In such case injunction to prevent the unlawful act is the proper remedy, and not *certiorari*.

*Appeal from an order allowing an injunction, granted by* Hon. J. W. Harvey, *Judge of the Third Judicial District.*

Filed, February 11, 1890.

Plaintiff, in his petition, prays that the defendants may be enjoined from enforcing and obeying an ordinance of the city of Creston providing for the conveyance of certain lots, and the city buildings thereon, of the value of thirty-five thousand dollars, to Union county, and restrained from the delivery to it of a deed executed under said ordinance, and held as an escrow by one of the defendants, to be delivered when the county shall remove the county-seat from Afton, and relocate it at Creston. An order for a preliminary injunction was allowed, from which defendants appeal.

*J. B. Sullivan, Thomas L. Maxwell, Hanna & Porter* and *McDill & Sullivan,* for appellants.

*J. M. Milligan* and *T. M. Stuart,* for appellee.

Beck, J.—I. The facts of this case are few, and involve no dispute. The defendant acquired the title of certain lots in the city of Creston, and erected thereon a large and valuable building, which, together with the lots, is worth thirty-five thousand dollars. The building has been used for city purposes, but is larger than is demanded therefor, and is well adapted for a court house, and offices required by the county. It appears to have been constructed for use by the county, and was intended as an inducement for the relocation of the county-seat at Creston. The city adopted an ordinance donating, with certain reservations, the lots and building to the county on condition of the relocation of the county-seat ·at Creston, and executed a deed to the county conveying, with reservations specified in the ordinance, the property to it, which was put into the possession of one of the defendants to be held as an escrow, and to be delivered to the

Brockman v. The City of Creston.

county upon the performance of the condition of the relocation of the county-seat at Creston. A petition is being circulated by a large number of the citizens of the county, with the expectation and purpose of procuring signers in sufficient numbers to authorize the submission of the question of relocation to a vote of the people. The plaintiff is a resident of Afton, and has never lived in Creston, though he owns real estate of small value there. He is opposed to the relocation of the county-seat at Creston, and has circulated and signed remonstrances against it.

II. It is a familiar rule of the law that cities and other municipal corporations can exercise only such authority as is expressly granted by their charters, or legislative acts creating them, or necessarily implied in such grant, or incident thereto; and reasonable doubts as to the existence of authority in such corporations are always to be resolved against it. See 1 Dill. Mun. Corp., sec. 55, and cases cited. No statute of this state grants cities the authority to dispose of or convey their property except for purposes contemplated by law. They have power to dispose of their real property for purposes authorized by law, and for no other purpose. The purpose of the disposition of the lands determines the question of authority. A city may sell its lands when its interests require that they be sold; but it possesses no authority to give away, or to convey, without consideration, or for a purpose which it has no authority to advance, any of its property. The city holds its property for the uses and benefits of the people. It is, as it were, a trustee for its citizens, and must use the property it holds for purposes sanctioned by law. There is no statute authorizing a city to erect buildings for the county, or to give to it a house and lands, to induce the relocation of the county-seat. It may probably be to the advantage of the city and its citizens to induce such an act. It may probably result to the great advantage of the citizens that manufactories, storehouses, hotels and the like be constructed. But it is

1. CITIES and towns : powers: disposition of public property.

not within the authority of the city to convey its property for such purposes. Counsel for defendant thinks that the authority to dispose of the lands of the city to secure the county-seat is conferred on the city government by Code, section 470, and section 1, chapter 89, Acts Eighteenth General Assembly. The first statute is as follows : " They shall have power to purchase or condemn, and pay for out of the general fund, and enter upon and take any lands within or without the territorial limits of such city or town for the use of public squares, streets, parks, commons, cemeteries, hospital grounds, or any other proper and legitimate municipal use, and to enclose, ornament and improve the same. They shall have entire control of the same, and shall have power, in case such lands are deemed unsuitable or insufficient for the purpose for which they were originally granted, to dispose of and convey the same; and conveyances executed in accordance with this chapter shall be held to extinguish all rights and claims of any such town or city to such lands existing prior to such conveyance. But, when such lands are so disposed of and conveyed, enough thereof shall be reserved for streets to accommodate adjoining property-owners." For the other statute, see McClain's Code, section 730, and Miller's Code, 141. It is in this language : " Any city of the first or second class, organized under the general laws of this state, shall have power to acquire real estate, or an interest therein, as a purchaser at an execution sale, where such city is the plaintiff in execution, or otherwise interested in the proceeding, and to dispose of the property, or interest therein, so acquired, and also to dispose of any real estate, or interest therein, including any streets or portion thereof vacated or discontinued, however acquired or held by such city, in such manner and upon such terms as the city council shall deem just and proper." These statutes confer no authority upon the cities to convey lands or other property for uses not contemplated by law. The statutes authorize the cities to dispose of the lands. It may be admitted that the purposes of the disposition

are not prescribed by the statute. It surely does not prescribe that such disposition shall be made to enable the city to do things for which no authority is conferred. The exercise of such power is not incidental to the exercise of power conferred upon the city, or necessary for the exercise of any express power. Should there be doubt upon this subject,—and surely it cannot be claimed that these statutes should be interpreted to confer the power in question without a doubt,—that doubt must be resolved against the existence of the power in, and its exercise by, the city. In obedience to the doctrines we have just announced, we must hold that the conveyance of the property in question cannot be made in the exercise of the lawful authority of the city. See, in support of these conclusions, *District Township v. Thomas*, 59 Iowa, 50.

III. It is insisted by defendants' counsel that plaintiff cannot maintain this action for the reason that

2. ——: unlawful disposition of property: injunction by taxpayer: good faith: extent of interest.

he is not a citizen, resident or taxable inhabitant of the city. The position of counsel is to the effect that a non-resident owner of property in a city can have no remedy against it to restrain the illegal sale or disposition of property. It is not denied that a citizen, resident or taxable inhabitant of the city could maintain this action. We think that a resident owner of property situated in a city is entitled to no measure of justice which is denied to a non-resident owner. He is entitled to his action to restrain the unlawful disposition of city property, for the reason that his interests as a taxpayer are prejudiced thereby. Now, surely it cannot be pretended that a non-resident taxpayer is not entitled to maintain an action to restrain acts of the city government which are prejudicial to his interest, when a resident could maintain such proceedings. It will be at once seen that such a distinction as to the rights of property-owners is in conflict with just ideas of that equality of rights which is secured by the foundation principles of our laws, and by constitutional guaranties. 2 Dill. Mun. Corp., sec. 736; High. Inj., sec. 794. In the

following cases the residence or citizenship of persons whose interests were prejudiced by municipal action was not esteemed essential to authorize them to maintain actions: *Brandirff v. Harrison County,* 50 Iowa, 164; *Olmstead v. Board,* 24 Iowa, 33; *Litchfield v. Polk County,* 18 Iowa, 70. It must be remembered that the doctrine we recognize is not based upon the right of the property-owner or taxpayer, resident or non-resident, to dictate and control the administration of the city government, and to nullify by proceedings in the courts the lawful acts of the city officers, legislative or executive, done in the administration of the city's affairs, for the reason that the proposed acts of the city do not promote its interest, or are against public policy. The foundation of the doctrine is the interference with the rights of the taxpayer in the increase of the burden of taxation, or the liability thereto, by misappropriating the property of the city, which may demand the levy of taxes to acquire other property in its place; or, the property having been acquired through taxation, its disposition would be in effect a misappropriation of taxes which may occasion levies to take the place of the misapplied tax.

IV. It is urged that the plaintiff is not prosecuting this action in good faith. This claim is based upon the ground that he is a resident and property-owner of Afton, the county-seat, which the people of Creston are endeavoring to relocate. It is argued that he is impelled by motives of self-interest which will be promoted by the defeat of the effort of the Creston people to cause the removal of the county-seat to their town. As we have seen, his right to prosecute this suit is based upon the fact that he is a taxpayer of Creston. We cannot inquire into his motives, but must enforce the rights which he establishes, though his motives for the prosecution of the suit may be other than escape from liability from the payment of taxes.

V. It is said that the value of the plaintiff's property in Creston is inconsiderable, and his taxes, therefore, are trifling. But the law does not bestow remedies and

measure of relief because of large amounts in litigation. The taxpayer who owns property of small value is entitled to the same remedies and the same relief, to protect his rights, as the man who pays taxes on the largest property in the town.

VI.   It is claimed that plaintiff is prematurely prosecuting this action, and that he cannot maintain the proceeding until a tax is levied, by reason of the disposition of the house and lot in question.   But the law will grant preventive remedies when loss and damage are threatened by the act of the city government.   Not only will plaintiff's rights be more perfectly protected by enjoining proceedings before taxes be levied, but the interests of the city and citizens will be secured from the unjust effects which might flow from declaring the city's action illegal after contracts and deeds were executed in reliance thereon.

*3. ——: ——: ——: when right of action matures.*

VII.   Counsel claim that the plaintiff has erroneously chosen his remedy; that it should have been by *certiorari*.   But it is well settled that the proper proceeding to arrest an attempt of a municipal corporation to unlawfully dispose of its property to the injury of the taxpayers, as well as to do other acts void for want of authority, is in chancery, where an injunction will afford the appropriate relief.

*4. ——: ——: remedy.*

These considerations lead us to the conclusion that the order of the district court allowing the injunction ought to be                                            AFFIRMED.