B. F. HEINS, Appellant, v. GEORGE A. LINCOLN, as Mayor of the City of Cedar Rapids, Iowa, *et al.*

**Municipal Debts:** CONSTITUTIONAL LAW: *Refunding.* The issuance by a city of long time interest bearing bonds in payment of its current debts evidenced by city warrants, is not authorized by a provision in the city charter authorizing a city council to "borrow money for any object or purpose in their discretion and to pledge the faith of the city for the payment thereof," and also authorizing it to levy taxes for the payment of such warrants. *Sioux City v. Weare* 59 Iowa, 98, distinguished and explained.

SAME. An ordinance by a city whose indebtedness exceeds the constitutional limit, authorizing the issuance and selling of bonds, putting the cash in the treasury and thereafter redeeming old bonds therewith, is void, as authorizing the creation of a debt beyond the constitutional limit.

SAME: *Exchange.* Where a city seeks to refund outstanding bonds, and its debt has reached the constitutional limit, it may, by a proper resolution, without increasing its debt, place the refunding bonds, properly executed, in the hands of a trustee, with power to deliver new bonds when the old bonds have been delivered to the trustee and cancelled.

RESOLUTIONS: *Mayor.* A resolution by a city council providing for the exchange of new bonds of the city for old bonds and outstanding warrants is invalid unless signed by the mayor or passed over his veto, under Acts Twentieth General Assembly, chapter 192, section 1, providing that the mayor shall sign every resolution passed by any city of the first and second classes, before it takes effect.

**Refunding Bonds:** CONSTRUCTION OF STATUTE. Acts Seventeenth General Assembly, chapter 58, provides for refunding bonded indebtedness and requires an annual tax to pay interest and part of the principal. It was made applicable to cities under special

| 102 | 69 |
| 106 | 630 |
| 102 | 69 |
| 111 | 42 |
| 111 | 112 |
| 102 | 69 |
| 112 | 392 |
| 102 | 69 |
| 119 | 428 |
| 102 | 69 |
| 121 | 788 |
| 102 | 69 |
| 129 | 330 |
| 102 | 69 |
| 131 | 546 |
| 102 | 69 |
| 136 | 196 |
| 136 | 487 |

NOTE.—On the question of what constitutes an indebtedness of a municipality within the meaning of restrictions thereon, see note to *Beard v. Hopkinsville* (Ky.) 23 L. R. A. 402.

charters, by Acts Eighteenth General Assembly, chapter 140. Acts Twenty-second General Assembly, chapter 19, paragraphs 1, 7, provide that cities under special charter may refund debts "evidenced by bonds heretofore issued and outstanding," and that the power conferred by said acts of the Seventeenth General Assembly shall not be impaired. *Held*, refunding bonds could, in turn, be refunded, though the requirement of Acts Seventeenth General Assembly, as to levying a tax, had not been complied with.

*Appeal from Linn District Court.*—HON. WILLIAM P. WOLF, Judge.

TUESDAY, MAY 11, 1897.

THIS is an action in equity to restrain the issuance of bonds by the city of Cedar Rapids. The defendants are the mayor, the finance committee of the city council, the city council, the city treasurer, and the city itself. The city proposed to issue two series of bonds, each bond to be for one thousand dollars, and to draw four and one-half per cent. interest, payable semi-annually. All of the bonds were to mature in twenty years. The first issue was of twenty thousand dollars of refunding bonds, to refund refunding bonds outstanding. The second issue was of sixty-eight thousand dollars of warrant bonds, for funding outstanding general warrants of said city. The-constitutional limit of indebtedness of said city is one hundred and ninety-seven thousand, three hundred and seventeen dollars and ten cents, and the city is already indebted in excess of said limit. The pleadings are voluminous, but the contentions of the parties may be briefly stated as follows: *First*. Appellant claims both bond issues are void, in that they create an indebtedness in excess of the constitutional limit. *Second*. That the law was violated, because the bonds were not sold to the highest bidder. *Third*. That the resolution under which the bonds were sold is void, it not having been signed by the

mayor. As to the issue of twenty thousand dollars in bonds, it is also claimed that the resolution authorizing their sale was contrary to, and in violation of, an ordinance of the city, and that there is no authority to issue refunding bonds to take up or pay off refunding bonds. The sixty-eight thousand dollar issue of bonds is also claimed to be void, because not authorized by the city charter. The defendants claim, that the refunding bonds will not create any additional debt; that they simply take the place of outstanding bonds. They deny that the bonds were to be sold to Roberts & Co., or that they are invalid; aver that the warrant bonds were issued under and by virtue of power given by an ordinance of the city, and a favorable vote of the people; that they are to be exchanged for outstanding city warrants, and the debt will not be increased. The court, at the conclusion of the trial, found that the bonds were, in all respects, legal, denied an injunction, and dismissed the plaintiff's bill at his costs. Plaintiff appeals.—*Reversed.*

*Lewis Heins* for appellant.

*Warren Harman* and *J. J. Powell* for appellees.

KINNE, C. J.—I. It conclusively appears from the record in this case that the city of Cedar Rapids was, when the bonds in controversy were proposed to be issued, as well as when this case was tried below, indebted far in excess of the limit fixed by the constitution of the state. If, therefore, the bonds created an additional indebtedness they were void. We first turn our attention to the contention of appellant that refunding bonds cannot be issued to take up refunding bonds. It is conceded that the bonds to be taken up by the twenty thousand dollar issue were refunding bonds previously issued to refund other bonds. It

is to be remembered that the city of Cedar Rapids is acting under a special charter. Chapter 19 of the Twenty-second General Assembly provides: "Section 1. That all cities in this state having a population of more than two thousand, organized and existing under special charters, are hereby authorized and empowered if, by a vote of two-thirds of the city council, it be deemed for the public interests to refund the indebtedness of any such city evidenced by the bonds thereof, heretofore issued, and outstanding at the time of the passage of this act and to issue the coupon bonds of such city in denominations of not less than one hundred dollars and not more than one thousand dollars, and having not more than twenty years to run, redeemable in lawful money of the United States at maturity and bearing interest payable semi-annually at a rate not exceeding six per cent. per annum." Section 2 provides the form of such bonds. Section 3 provides how the bonds shall be sold, and that they may be exchanged for "outstanding bonds, par for par." Section 7 provides that nothing in the act shall impair or interfere with the powers conferred by chapter 58 of the Laws of the Seventeenth General Assembly, as amended by chapter 140 of the Laws of the Eighteenth General Assembly. Chapter 140, Acts of the Eighteenth General Assembly, made chapter 58, Acts of the Seventeenth General Assembly, applicable to cities acting under special charters. The latter chapter provided for refunding the bonded debt of cities, and provided that the city council should assess and levy each year on the taxable property of the city a sum sufficient to pay the interest on such bonds and a certain portion of the principal, and that the fund arising from such levies should be used only for the purpose of paying the bonds and interest. It was under that law that the bonds of the

city of Cedar Rapids were refunded which it is now proposed to refund by this twenty thousand dollar issue of bonds. It will be noticed that the provisions of the Acts of the Twenty-second General Assembly, heretofore quoted, do not, in terms, undertake to limit the right to refund to bonds which have never been refunded. No case is cited which would justify us in holding that a statute which expressly empowers a city to fund its debt or bonds, and which does not undertake to limit such right or power, applies only to bonds which have not already once been refunded. We discover nothing in the Acts of the Twenty-second General Assembly which warrants such a construction. It appears that the city council never complied with the Acts of the Seventeenth General Assembly in levying a tax, and keeping it solely for the purpose of paying the principal and interest on the bonds. It had a general sinking fund, which has been exhausted except a few thousand dollars. We do not think that because the city council violated the law in failing to levy and collect the tax provided for to pay the interest and principal of the bonds that the city is now precluded from refunding these bonds. We conclude, therefore, that the power to issue refunding bonds under the Acts of the Twenty-second General Assembly is not limited to bonds which have not before been refunded.

II. Were the bonds void as creating a debt in excess of the constitutional limit? Without now discussing the question of the power of the council to issue bonds to take up city warrants, but assuming that such power exists, we cannot see how it can be said that either issue of bonds increased the debt of the city. The council passed ordinances providing for the issuance and sale of the bonds. The bonds were to be sold, and the proceeds paid into the city treasury. After this was done, the treasurer was

to publish a notice to the holders of the bonds to be redeemed to present the same for payment. Now, if the bonds had been in fact issued under these ordinances, they would have been clearly void, because, after they had been sold, and before the old bonds had been called in, the indebtedness of the city would have been increased in the amount of the new bonds issued. *Doon District Township v. Cummins*, 12 Sup. Ct. Rep. 220. But these bonds in controversy were not issued under said ordinances. The provisions of the ordinances as to selling the bonds, putting the cash in the treasury, and thereafter redeeming the old bonds, could not be carried out without increasing the city debt beyond the constitutional limit, and were, therefore, void. Thereafter the city council adopted a resolution providing for the exchange of the new bonds for the old bonds, and of the warrant bonds for the outstanding warrants; and to effectuate said exchange the council appointed the First National Bank, of Norwich, Conn., as the agent of the city, and placed all of said bonds, duly executed, in the hands of its said agent, in trust, with power to deliver new bonds when the old bonds had been delivered to it and canceled, and to deliver warrant bonds when the warrants had been delivered to it. This trust was duly accepted by said bank. Under this arrangement the new bonds created no obligation against the city until the same were delivered by the trustee, which delivery was not to take place until the old bonds or warrants were received by it and canceled. We do not see how any plan of exchange could be devised which would better protect the city, and at the same time create no additional debt.

III. It is said that the resolution is of no effect because the same was not signed by the mayor. The statute provides that the mayor shall sign every resolution passed by any city of the first and second

classes before such resolution shall take effect or be in force.   Acts Twentieth General Assembly, chapter 192, section 1; Acts Twenty-second General Assembly, chapter 2, section 1.   This same chapter 192, Acts Twentieth General Assembly, provides that if the mayor shall refuse to sign any such resolution after it has passed the council, he shall call a meeting of the council, and return the resolution to it, with his reasons for refusing to sign the resolution; and under such circumstances it only becomes effective if passed by the council over his veto by a two-thirds vote.   This requirement of the law that the mayor shall sign the resolutions of the council before they shall take effect is evidently intended to be mandatory.   It is designed as a check upon hasty or unwise action of the council, and we do not see how the fact that the city had delivered the bonds to its trustee, who had receipted for the same, can be held to avoid the necessity for a strict compliance with this mandatory provision of the statute.   While, therefore the exchange of bonds might have been effected in the manner proposed under such a resolution properly passed, and signed by the mayor, and such an exchange would not have increased the indebtedness of the city, but simply changed its form, still such a resolution, not signed by the mayor, was without effect, and did not authorize the council to effect such exchange thereunder.   Inasmuch as the sale of the bonds as provided for in the ordinance would increase the debt beyond the constitutional limit, such provisions were void, and, as the resolution was not signed as required by law, no exchange of the bonds could be made thereunder.

IV.   Appellant insists that the city had no power to issue its bonds to pay or redeem its outstanding general warrants.   In view of what we have already said, that the city had no power to act under the

unsigned resolution, we might pass the question now presented, because its determination is not essential to a disposition of this appeal. As, however, the question is one of great importance, and may arise again in the further progress of this action, it is proper that we now decide it. The right to issue this sixty-eight thousand dollars in bonds is claimed to be given by section 54 of the charter of the city. That section provides: "The city council is hereby authorized to borrow money for any object or purpose in their discretion, and to pledge the faith of the city for the payment thereof, provided the question of borrowing is first submitted to the legal and qualified voters of the city and notice of a length of time, as in city elections, being first given, stating the manner and object of the loan, and if a majority decide in favor of said loan, then the city council shall by ordinance establish a sinking fund to provide the means to pay any indebtedness created by virtue of the authority granted in this section." Acting under this section, the city council submitted to the electors of the city the question as to whether the city should issue twenty-year bonds in the sum of sixty-eight thousand dollars, to bear not to exceed five per cent. interest, payable semi-annually, for the purpose of funding its floating debt; and the proposal received the indorsement of a large majority of the electors at the polls. It is proper to say that it is admitted that the sixty-eight thousand dollars in city warrants which are proposed to be taken up constitute in all respects a legal indebtedness against the city. The real question is, does this section confer on the city the right to pay its current debts, which are evidenced by city warrants, by issuing long-time interest-bearing bonds therefor? The section, it will be observed, is, in its phraseology, unlimited as to the purposes for which money may be borrowed, and the faith of the city

pledged in payment thereof. The council is, by its terms, vested with the discretion of determining the necessity for the loan, and whether or not the purpose is a proper one. Nevertheless, there is a limit to the power thus granted, and the language is to be construed as giving power to borrow money only for legitimate corporate purposes. Nor is the power given in express terms, to issue bonds for the money so borrowed. Municipal corporations possess, and can exercise, only the following powers: *First*, those granted in express words; *second*, those necessarily or fairly implied, or incident to the powers expressly granted; *third*, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Such are the rules laid down by Judge Dillon in his excellent work on Municipal Corporations, and they are undoubtedly correct. Dillon, Mun. Corp., section 89; *Merriam v. Moody's Executors*, 25 Iowa, 163; *Keokuk v. Scroggs*, 39 Iowa, 447; *Hanger v. City of Des Moines*, 52 Iowa, 193 (2 N. W. Rep. 1105); *Clark v. City of Des Moines*, 19 Iowa, 199; *Brockman v. City of Creston*, 79 Iowa, 587 (44 N. W. Rep. 822); *Becker v. Keokuk Water-Works*, 79 Iowa, 419 (44 N. W. Rep. 694). As we have seen, no power to issue bonds has been expressly granted by said section. Is such power necessarily or fairly implied in or incident to the powers expressly granted? The section implies nothing touching the issuance of bonds. The provision touching the creation of a sinking fund as well applies to an ordinary loan as to a loan to be evidenced by negotiable bonds. Is the power to issue bonds indispensable to effectuate the purposes and objects of the corporation? Manifestly, not so. This same city charter makes provision for the levying and collection of taxes not exceeding one per cent. in any one year upon all property within the city, subject to taxation. It appears

from the record that, if the city had availed itself of this provision of its charter, it could have paid off this sixty-eight thousand dollars of warrants inside of two years. The legislature had, by conferring the power of taxation on the city, provided the means by which its current obligations might be met. Again, we do not understand that the power to borrow money vested in a municipal corporation authorizes such corporation to issue bonds in payment therefor, in the absence of express authority to that effect. We know that some courts have so held, but we are not prepared to assent to the correctness of such holdings. As is said in *Merrill v. Monticello*, 138 U. S. 673 (11 Sup. Ct. Rep. 441): "It does not follow that, because the town of Monticello had the right to contract a loan, it had, therefore, the right to issue negotiable bonds, and put them on the market as evidences of such loan. To borrow money and to give a bond or obligation therefor, which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and in legal effect, essentially different transactions. * * * Nowhere in the statute is there any express power given to issue negotiable bonds as evidence of such a loan. Nor can such power be implied because the existence of it is not necessary to carry out any of the purposes of the municipality." So, in the case at bar, no express power is given to issue bonds, and none can be implied, because it is not necessary to carry out the objects and purposes of the municipality. *Clark v. City of Des Moines*, 19 Iowa, 199; *Dively v. City of Cedar Falls*, 21 Iowa, 569; *Williamson v. City of Keokuk*, 44 Iowa, 88. It is a familiar rule that all doubts as to the existence of authority of a municipal corporation to do an act must be resolved against it. *Brockman v. City of Creston*, 79 Iowa, 587 (44 N. W. Rep. 822); *Becker v. Keokuk Water-Works*, 79 Iowa,

419 (44 N. W. Rep. 694). Some language used in the case of *City of Sioux City v. Weare*, 59 Iowa, 98 (12 N. W. Rep. 786), may seem to conflict with the views herein expressed, but the facts in that case are different; nor do we think the court intended to adopt the broad rule that, if a municipal corporation had the power to borrow money, it would necessarily follow that it had the power to issue its negotiable bonds therefor, in the absence of express authority so to do. The policy of the law requires that, whenever it is practicable or possible, the current expenses of such corporations shall be paid by the levy of taxes; and, while the section of the charter under consideration vests in the city power to borrow money for proper city purposes, it would, we think, be a forced construction to say that it was ever intended thereby to empower the city to postpone the payment of its ordinary current expenses, evidenced by its warrants, for a period of twenty years, and to issue bonds therefor. We do not doubt the right of the city, under the power conferred by this section, to, in cases of emergency, borrow money to discharge even its current expenses, but we do not think it does, or was intended to, authorize it to go to the extent of postponing the payment of its current expenses for a long period of time and to issue its bonds therefor. If this may be done, there is nothing in the way of the city's borrowing money and issuing long-time bonds in payment of all its usual general expenses; and such a course might be followed year after year, without let or hindrance, save when the constitutional limit of debt would be exceeded. The views we have expressed find support in the fact that wherever it has been deemed necessary that such corporations should have the power to issue bonds, express statute authority to that effect has been given by the legislature. Even if such power exists in this case, it must be because

it is necessary to effectuate the objects and purposes of the municipality; and we have attempted to show that no such necessity existed, as the city possessed ample power, under other sections of its charter, to levy taxes, and pay the warrants in controversy. In any view of the case, it seems to us that the city had no power or authority to issue these bonds for the purpose of taking up this sixty-eight thousand dollars in city warrants. Its power is not to be determined from the fact that it might be convenient so to do, but it is a question of necessity in the proper exercise of other powers expressly granted. No such necessity existed. In passing, it may properly be said that the general current expenses of such municipalities should be paid out of taxes levied for that purpose, and it is not the policy of the law to permit a long time bonded debt to be created therefor, which shall be a burden upon posterity. The same policy may not apply to those extensive and permanent improvements which will benefit those who may live after the present generation shall have passed away. We have fully considered all questions which are material to this controversy, in view of the conclusions we have reached. For the reasons heretofore given, the district court erred in refusing an injunction, and in dismissing the plaintiff's bill at his costs.—REVERSED.