DAVID F. WITTER AND C. O. NOURSE, Plaintiffs, v. BOARD OF SUPERVISORS OF POLK COUNTY, et al., Defendants, AND PAUL KRAETSCH, et al., Plaintiffs, BOARD OF SUPERVISORS, POLK COUNTY, IOWA, Defendants, DAVID F. WITTER AND C. O. NOURSE, Interveners.

**Counties:** IMPLIED POWER TO MAKE DEBT: *Non-negotiable evidence of debt.* The power to purchase real estate necessary for the erection of buildings for county purposes, given to the board of supervisors by Code, section 422, subdivision 9, carries with it, as a necessary incident thereto, the power to create an indebtedness therefor, and to evidence the same by some form of non-negotiable instrument.

**SAME.** Under Code, sections 447, 448, authorizing counties to borrow money for the erection of public buildings, and to issue bonds for such indebtedness, a county has no express or implied power to issue negotiable bonds for a debt created in the purchase of necessary real estate for a court house site, under authority given by section 422, subdivision 9.

**Constitutional Law:** CURATIVE STATUTES. The curative act of March 29, 1900, adopted by the Twenty-eighth General Assembly, legalizing a special election held in Polk county on a proposition submitted for the purpose of authorizing the board of supervisors to purchase a court house at a cost not to exceed $100,000, and to legalize the authority of said board to purchase real estate for said purpose at a cost not to exceed said sum, and to levy a tax to pay the indebtedness created by such purchase, confers no power on the county which it did not then hold in common with all the counties of the state, but merely cures defects in the form of the procedure, and hence is not violative of Constitution, Article 1, section 6, and *id.* article 3. section 30, requiring laws to be uniform, and prohibiting local or special legislation.

*Cross Appeals Polk District Court.*—HON. S. F. PROUTY, Judge.

FRIDAY, OCTOBER 26, 1900.

AT the general election in 1898, by a vote of the electors of Polk county, the board of supervisors was authorized to build a new court house for the county, and to issue bonds to raise the funds therefor, and to levy a tax to pay said bonds. A change of location of the court house within the city of Des Moines was afterwards agitated, and at a special election held January 25, 1899, the board of supervisors submitted to the voters of the county the following propositions: "Shall the board of supervisors of Polk county purchase a site on the west bank of the Des Moines river, between Court avenue and Grand avenue, and east of West Second street, in the city of Des Moines, Iowa, at a cost not to exceed $100,000, upon which to erect a new court house; and shall the board of supervisors issue bonds of Polk county, Iowa, for the purpose of securing money with which to purchase such site; and shall the board of supervisors be authorized to levy an annual tax of not to exceed one-quarter of one mill on the dollar of the assessed valuation of the taxable property within Polk county for a period not exceeding twenty years, for the purpose of paying the principal and interest?" After this election was held, the following proceedings were instituted, as related by counsel, which we are glad to avail ourselves of in stating the present situation of affairs: Owing to the alleged informality in some of the returns, the board of supervisors refused to declare that the propositions had been adopted, and a mandamus suit was instituted, the title being, "The State of Iowa *ex rel.* John McClellan County Attorney, vs. The Board of Supervisors of Polk County." The object of this suit was to require a canvass of the returns and a declaration of the result. Under an agreement of the parties, the case was tried at the January term,

1899, and a judgment rendered which directed a canvass of the vote at the special election in accordance with the requirements of the law. The defendants have not appealed from this judgment. Second. At about the same time Paul Kraetsch, a property owner and taxpayer, brought his suit for an injunction against the board of supervisors, the object of which was to reach exactly the same end sought in the mandamus proceeding, viz., the ascertainment of the result of the special election. In this suit David F. Witter and Charles O. Nourse filed a petition of intervention, making the plaintiff in the suit as well as the board of supervisors defendants, and which, in substance, charged that the statute did not authorize the county to issue negotiable bonds or borrow money under any circumstances for the purpose of procuring the funds necessary to purchase a new site. Issues were joined upon the petition of intervention, and by stipulation it became an independent petition in equity, and was heard as such. A final decree was rendered, which held that there was no authority in the law under which a county could issue bonds or borrow money for the purpose of buying a site for a court house, and the board was enjoined from so doing. The board of supervisors and Kraetsch appealed from this decree. Subsequent to their intervention in the Kraetsch case, the plaintiffs David F. Witter and C. O. Nourse brought the second of the two suits shown in the title hereto, and issues were so framed in it as to present the following questions: (1) Did the special election of January 25, 1899, confer upon the board of supervisors the authority to buy a new site, not exceeding in price $100,000? (2) Did the special election of January 25, 1899, confer upon the board of supervisors authority to issue non-negotiable warrants, and with such warrants pay for a new site, and to levy a tax for the purpose of accumulating a fund with which to redeem the warrants? Upon the final hearing the district court decided: *First*, that the special election did not authorize the board

to buy a new site with warrants to be redeemed from the proceeds of a special tax levied through a series of years; *second,* that the special election did authorize the board to buy a new site, not exceeding $100,000 in price, and pay for the same with the proceeds of the present site, or with any other funds that might be in the county treasury not otherwise appropriated. From the decree so rendered both parties have appealed. The plaintiffs insist that the special election of January 25, 1899, is absolutely void, and conferred no authority of any kind upon the board, and that the court erred in holding that the board could legally buy a new site costing more than $2,000, and pay for the same with the proceeds of the sale of the present site, or with other funds that might be available for such purpose. On the other hand, the board of supervisors insists that the court erred in holding that the special election did not empower the board to buy a new site, and pay for it with warrants upon the treasury; the warrants to be payable only from the proceeds of a tax of one-fourth of a mill levied only upon the taxable property of Polk county, the levy to continue until the warrants were redeemed, but in no event to continue more than 20 years. It was agreed by stipulation that the appeals should be consolidated, and the cases submitted together, which was done. After these cases were submitted at the January, 1900, term of this court, the following legalizing act respecting the matters in controversy was passed by the general assembly:

"Whereas there was on the twenty-fifth day of January, 1899, held in the county of Polk, and state of Iowa, a special election at which there was submitted to the voters of this county the following propositions: Shall the board of supervisors of Polk county, Iowa, purchase a site on the west bank of the Des Moines river, between Court avenue and Grand avenue, and east of West Second street, in the City of Des Moines, Iowa, at a cost not to exceed one hundred thousand (100,000) dollars, upon which

to erect a new court house; and, shall the board of supervisors issue bonds of Polk county, Iowa, for the purpose of securing money with which to purchase the site; and shall the board of supervisors be authorized to levy an annual tax of not to exceed one quarter of one mill on the dollar on the assessed valuation of the taxable property within Polk county, Iowa, for a period of not exceeding twenty (20) years, for the purpose of paying the principal and interest of said bonds?" and whereas, at the said special election the said propositions were voted for by a majority of all the persons voting for and against the same; and whereas, it has been declared by the district court of Polk county, Iowa, and by the board of supervisors of said county, that the said propositions were adopted at said election; and whereas, doubts have arisen respecting the legality and regularity of the proceedings of the board of supervisors leading up to said election, and respecting the legality and regularity of the notice of said election, and respecting the legality and regularity of the proposition submitted at said election, and respecting the authority vested in said board of supervisors by said election: Be it enacted by the general assembly of the state of Iowa:

"Section 1. That the resolutions and proceedings of the board of supervisors of Polk county, Iowa, concerning and providing for said special election of January 25, 1899, the notice of the said election and the propositions submitted thereat, be and the same are hereby legalized, and the adoption of the said propositions by the voters of said county, as hereinbefore recited, shall have the following force and effect: *First.* To authorize the board of supervisors of Polk county, Iowa, to purchase a site on the west bank of the Des Moines river between Court avenue and Grand avenue and east of West Second street in the city of Des Moines, Iowa, at a cost not to exceed one hundred thousand (100,000) dollars, upon which to erect a new court house, and to pay for the same with any money in the treasury of said county, not otherwise appropriated, whether the

proceeds of the sale of the real property now occupied by the court house or of ordinary taxation. *Second.* To levy a tax of one-quarter of one mill upon the assessed valuation of the taxable property within Polk county, Iowa, for a period not to exceed twenty (20) years, for the payment of the indebtedness created in the purchase of a site on the west bank of the Des Moines river, between Court avenue and Grand avenue and east of West Second street, in the city of Des Moines, Iowa, at a cost not to exceed one hundred thousand (100,000) dollars, upon which to erect a new court house, said tax to be levied annually, and to begin in the year 1900, provided the said board shall decide to incur an indebtedness in the purchase of said site. *Third.* To incur an indebtedness not exceeding one hundred thousand (100,000) dollars, for a site on the west bank of the Des Moines river, between Court avenue and Grand avenue, and east of West Second street in the city of Des Moines, Iowa, upon which to erect a new court house, and to execute proper evidences of such indebtedness."

Acts Twenty-eighth General Assembly, p. 143.

Whereupon the original submission was set aside, and the cases resubmitted at the May term, 1900, with arguments as to the effect of the legalizing act.—*Modified* and *Affirmed.*

*C. C. & C. L. Nourse* and *Bowen & Brockett* for plaintiffs David F. Witter and C. O. Nourse.

*Cummins, Hewitt & Wright, Phillips, Ryan & Ryan,* and *Evans & Adams* for defendants.

SHERWIN, J.—The plaintiffs David F. Witter and C. O. Nourse assail the curative act as unconstitutional, and allege as grounds therefor that it is intended to confer upon the board of supervisors of Polk county alone the following powers: *First,* the power to levy a special tax for county purposes for the next 20 years; VOL. 112 Iowa—25.

*second,* the power to purchase real estate exceeding $2,000
in value, in violation of the general laws of the state, which
forbid the exercise of that power; *third,* the power to create
a debt and to issue evidence of indebtedness of a tenor and
nature not authorized by any existing statute, and not per-
mitted to be issued by any other county of the state.    The
plaintiffs concede "the general proposition that a curative
act is valid in cases where there has been a defective or
irregular exercise of a power already conferred, and that
the legislature may cure such defects as it might originally
not have required."    To determine the effect of this cura-
tive act upon the questions presented to us by the appeals
is the duty to which we first direct our attenion, and to
properly do this it is necessary to first determine what power,
either express or necessarily implied, was lodged in the
board of supervisors by the law as it existed at the time the
act was passed.

The first sections of the statute bearing upon this sub-
ject are as follows:    Subdivision 9 of section 422 of the
Code gives the board of superviors power "to purchase for
the use of the county any real estate necessary for the erec-
tion of buildings for county purposes."    The general power
granted by this section is limited by section 423, the
material part of which is in the following language:    "The
board of supervisors shall not order   *   *   *   the pur-
chase of real estate for county purposes exceeding two thou-
sand dollars in value, until a proposition therefor shall have
first been submitted to the legal voters of the county, and
voted for by a majority of all persons voting for and against
such proposition at general or special election, notice of the
same being given for thirty days previously in a newspaper,
if one be published in the county."    Section 422 confers
upon the board of supervisors express power to purchase
real estate upon which to erect a court house, but the amount
which may be used for this purpose cannot exceed $2,000,
unless directly authorized by a majority of the legal voters

of the county. The board, having the power under the statute to purchase within the expressed limits, needed only the authority of a majority of the voters of the county to extend this power to the purchase of a site costing $100,000. This authority was conferred by the vote at the special election of January 25, 1899, unless there was some fatal defect in the procedure submitting the proposition, of which we shall say more hereafter.

Assuming, then, for present purposes, that full power had been given the board of supervisors to purchase a new court house site at a cost of not to exceed $100,000, we come to the next question which logically presents itself, and one which we deem it necessary to determine in arriving at a true solution of the questions before us, namely, does the power to purchase real estate for county purposes carry with it as an incident thereto the power to create an indebtedness therefor? We think it may be conceded that the legislature has not given the board of supervisors express power to incur indebtedness for the purchase of property for county purposes, but, the express power to purchase being given without any restrictions except such as may be removed by a vote of the people, and no particular mode of purchase being pointed out, we see no valid reason why the board may not, as a necessary incident to this power, create an indebtedness for the real property so bought. This principle was announced in the case of *Mullarky v. Town of Cedar Falls*, 19 Iowa, 21, where it is said: "It is first objected that the town as a municipal corporation could not legitimately build such a bridge, but when we look into the powers which its acts of incorporation under the laws of the state confer upon the town, its control of the streets, and its known duty to make the same so as to afford an easy and safe transit to all parts, we do not feel at liberty to doubt the existence of the power and its proper exercise in this case. The bridge, in its construction, cost some $12,000 or $15,000.

To meet this expense the town issued its warrants or notes in denominations of one, three, and five dollars. Its powers to do so are denied, but, the object itself being legitimate, it becomes a necessary means to an end, and to do so was not an undue exercise of authority." Under the provisions of section 1717 of the Code of 1873, this court held in *Austin v. District,* 51 Iowa, 102, that the district township had the power to incur indebtedness for the erection of a school house. It is said: "There is certainly no statutory inhibition upon a district township to prevent it from erecting a school house in advance of the collection of the taxes necessary to pay for it. It seems, indeed, that debts may be contracted in the erection of a school house in advance even of the levy of the necessary taxes." This case, it is true, may be said to depend somewhat upon the statute cited, but sections 447-449 of the Code, relating to the powers and duties of the board of supervisors, in our judgment as clearly contemplate the incurring of indebtedness as did section 1717 of the Code of 1873.

Judge Dillon, in his work on Municipal Corporations, section 125, says: "Although a municipal corporation proper, in the execution of its ordinary corporate powers, and the discharge of its corporate duties, may make contracts and create debts, and may, when not restrained by statute, evidence the liabilities thus incurred, yet, if the instrument is made to assume the form of negotiable paper, such paper is always open to defenses in the hand of the transferees when it is used without the express authority from the legislature, or authority fairly to be implied from the charter or legislation applicable to the municipality." Tiedeman on Municipal Corporations, section 182, says: "The current of decisions is running in favor of the view that a municipal corporation may exercise any power that is suitable or needful to effectuate the business for which it is created, whether the power be expressly granted or must be implied, and that in the implied power of a municipal

corporation should be included the power to borrow money." The same doctrine is announced in the following cases: *State v. Babcock,* 22 Neb., 614 (35 N. W. Rep. 941); *City of Williamsport v. Com.,* 84 Pa. St., 487; *City of Richmond v. McGirr,* 78 Ind., 192; *Danielly v. Cabaniss,* 52 Ga., 211; *Allen v. Intendant,* etc., 89 Ala., 641 (8 South. Rep. 30, 9 L. R. A. 497); *Claiborne County v. Brooks,* 111 U. S., 400 (4 Sup. Ct. Rep. 489, 28 L. Ed. 470). If, then, under the express power given the county to purchase real estate, the power to create an indebtedness therefor follows as a necessary incident to the exercise of such power, may the county issue its non-negotiable evidence of such indebtedness? We are clearly of the opinion that this inquiry must, from the very necessities of the case, be answered in the affirmative. It would be idle to say that the power to purchase on credit exists, and to then assert that no means may be employed to carry out this existing power, and in many instances completely tie the hands of the county, and indirectly deprive it of the power to create an indebtedness, and render it utterly impossible for it to make the permanent public improvements demanded, unless such improvements had been anticipated, and funds provided therefor in advance. To so hold would be illogical, and contrary to good business methods, and, in our judgment, antagonistic to the best interests of the taxpayers of the county. The board of supervisors is the agent of the county; and where it has been authorized by its principal, either by express power conferred by law, or by the power necessarily implied from such express power, to do certain things for the benefit of the principal, it should be held to have the power to carry on the business in hand, as would a private person, using therefor business methods and resorting to such means as are recognized as legitimate in the business world. In other words, no valid reason can be given why a board of supervisors should not transact the business of the county along well-established business lines, when it has power to

do it at all. *Clark v. Janesville,* 10 Wis., 136; *State v. Common Council of Madison,* 7 Wis., 688; *Ketchum v. City of Buffalo,* 14 N. Y., 356; *Clark v. School Directors,* 78 Ill., 474, and cases *supra.* If the foregoing views are correct, it needs no argument or citation of authorities to sustain the proposition that a tax may be levied to pay the lawful indebtedness thus created. And, if this may be done, why may not the board extend the period of taxation so that the future shall bear a part of the burden created by this extensive permanent improvement? If it be conceded for the purpose of argument that the statute does not specially provide for extending the period of taxation as in the case of the erection of buildings, we find no reason why this may not be done if it be the expressed wish of the voters of the county. The law does not prohibit it, and the expenditure of so large a sum for ground upon which to build a court house is an extraordinary one, which could not ordinarily be met without a special tax therefor. We think the board of supervisors, as the agent of the county, might well submit to its principal the question as to how and when the funds should be raised to pay for the ground about to be purchased, and that, when so advised, it could proceed accordingly, if to do so would not be in contravention of the statute.

We come now to a consideration of the curative act passed by the Twenty-eighth General Assembly. We have already determined that the county had the power before the passage of this act to create an indebtedness for the purchase of real property upon which to build a court house, and to evidence its indebtedness by some form of non-negotiable instrument. What was there, then, for the act to reach as a healing measure? Clearly, no vital question as to the power of the county, for this power, as already stated, it then had. Every question contained in the proposition submitted to the voters at the special election of January, 1899, except the question of

the issuance of bonds, was one which might lawfully be submitted to the voters for their determination, and these questions being answered in the affirmative gave the board of supervisors undoubted power to do all they asked, with the exception above stated. The real effect, then, of the act was merely to cure any defect in the form of the procedure or in the method of placing the proposition before the voters. It conferred no power upon Polk county. The power that we hold Polk county then had was common to all the counties in the state; hence the act is not in violation of either article 1, section 6, or of article 3, section 30, of the constitution of the state, and did no more than is cededed it might do. The general rule is thus laid down by Mr. Sutherland in his work on Statutory Construction (section 483): "The rule in regard to curative statutes is that if the thing omitted or failed to be done, and which constitutes the defect sought to be removed or made harmless, is something which the legislature might have dispensed with by previous statute, it may do so by a subsequent one. If the irregularity consists in doing some act, or doing it in the mode which the legislature might have made immaterial by a prior law, it may do so by a subsequent one." It is also so held in *Boardman v. Beckwith,* 18 Iowa, 292; *State v. Squires,* 26 Iowa, 340; *Richman v. Supervisors,* 77 Iowa, 517; *Tuttle v. Polk,* 84 Iowa, 12; *Windsor v. City of Des Moines,* 101 Iowa, 343; *Windsor v. City of Des Moines,* 110 Iowa, 75.

The remaining question to be determined is whether the county may issue negotiable bonds for the debt created in the purchase of a court house site. It will be noticed that no such authority was attempted to be given in the curative act we have just considered. It is contended by the county, however, that express power so to do is conferred by sections 447 and 448 of the Code, and that the power to issue bonds for the erection of a public building was also intended to include the ground

upon which it is situated. A careful examination of the statute covering the entire subject leads us to a different conclusion. We think the two sections relied upon do not confer express power to issue bonds for the purpose contended, nor will they, either singly or together, bear the construction contended for on the other point. If the legislature had intended to give the county such power, or if it had intended to include the necessary ground upon which the building must stand in the provision permitting bonds to be issued for the erection of the court house, it could certainly have made its intentions and meaning clear by the use of but few additional words.

It is further contended that the necessary power to issue bonds in cases of this kind should be implied. If we deemed this an open question in this state, it is possible that we might consistently so hold, following to its logical conclusion the holding that the county may create an indebtedness and pay the same by a tax levy extending over a term of years; but we are precluded from so doing by former decisions of this court. *Clark v. City of Des Moines,* 19 Iowa, 199; *Dively v. City of Cedar Falls,* 21 Iowa, 569; *Heins v. Lincoln,* 102 Iowa, 69. In the case of *Heins v. Lincoln* the city attempted to issue bonds in payment of warrants issued for the current expenses of the city, and, it is said, can be distinguished from the case at bar on that account; but the general question of the implied power of a municipality to issue its negotiable bonds was fully discussed, and the language of other courts holding that such power cannot be implied for any purpose cited with approval, and the language of the opinion is such that we think the desired distinction cannot be made. What was said in *Hull v. Marshall County,* 12 Iowa, 142, was in the way of discussion only, and did not decide any question in the case. The decrees of the district court are modified and affirmed in accordance herewith.—Modified and Affirmed.

Granger, C. J., not sitting.