NANCY REED, Appellant, v. THE CITY OF CEDAR RAPIDS
ET AL., Appellees.

**Municipal Corporations:** SPECIAL CHARTER CITIES : LIMIT OF INDEBT-
1  EDNESS.  Chapter 49 of the Acts of the 31st General Assembly,
limiting municipal indebtedness to 1¼ per cent. of the actual
value of taxable property within the corporation, has no appli-
cation to the cities acting under special charter, but they are
governed by the constitutional limitation of 5 per centum.

**Borrowing money.**  The council of a special charter city, when au-
2  thorized by a vote of the electors, has power to borrow money
for the erection of a City Hall and as incident thereto may
issue proper evidences of such loan.

**Same:** ISSUANCE OF NEGOTIABLE BONDS.  A special charter city cannot

3 issue long time negotiable bonds as evidence of money borrowed' for any purpose without express authority from the legislature.

*Appeal from Cedar Rapids Superior Court.*— HON. JAMES H. ROTHROCK, Judge.

THURSDAY, NOVEMBER 14, 1907.

SUIT in equity to enjoin defendants from issuing, delivering and selling a bond issue of the said city to the amount of $125,000. The trial court dismissed the petition and plaintiff appeals. *Reversed and remanded.*

*John A. Reed,* for appellant.

*Jas. W. Good* and *H. E. Spangler,* for appellee.

DEEMER, J.,— Pursuant to vote of the electors of the defendant city of Cedar Rapids, which is a special charter city, and to resolutions and orders of the city council, the

1. MUNICIPAL CORPORATIONS: special charter cities: limit of indebtedness.

defendant has issued $125,000 in negotiable bonds for the purpose of building a city hall, and through its treasurer is offering the same for sale upon sealed proposals. This action is to restrain the sale and delivery of the bonds, and the questions presented are succinctly stated by appellant's counsel in these words: " (1)   Does section 54 of the city charter authorize the city to borrow money for the purpose of building a city hall and to issue bonds therefor ?   (2)   Has the city authority to issue negotiable bonds or bonds in the form specified by Ordinance No. 763 ?   (3)   Does chapter 49 of the Acts of the Thirty-first General Assembly apply to cities acting under special charter, and limit the indebtedness of special charter cities to $1\frac{1}{4}$ per centum of the actual value of the taxable property within the city ? "

The value of the taxable property within the city is $19,885,085, and its indebtedness at the time the bonds in

question were issued, while not agreed to by the parties to this litigation, may for the purposes of the case be treated as $700,000. Chapter 49, Acts 31st General Assembly, provides, in substance, that no municipal corporation shall be allowed to become indebted to an amount exceeding in the aggregate the amount of $1\frac{1}{4}$ per centum of the actual value of the taxable property within such corporation; the amount of such taxable property to be ascertained by the last State and county tax list previous to the incurring of such indebtedness. If this act applies to special charter cities, then the bond issue in question is in excess of the amount for which the defendant city may become indebted. By section 933 of the Code, it is provided, in substance, that no laws relating to the powers, duties, liabilities, or obligations of cities or towns shall in any manner affect or be construed to affect cities while acting under special charters, unless the same have special reference to or are made applicable to such cities. Chapter 49, Acts 31st General Assembly, repealed chapter 43, Acts 30th General Assembly, which amended section 1306b of the Code Supplement of 1902, and this expressly included special charter cities. But the act in question makes no reference to such cities, and this omission is of great significance in arriving at the legislative intent and purpose. It is clear, we think, that chapter 49, 31st General Assembly, has no reference to special charter cities, and that the only limitation upon the amount of indebtedness which they may incur is the constitutional one of 5 per centum upon the taxable value, which in special charter cities is the actual value. See article 11, section 3, Constitution, and *Halsey v. Belle Plaine,* 128 Iowa, 467. This being true, the bonds were not in excess of either statutory or constitutional limitation.

II. By section 54 of the charter of defendant city, it is provided: " The said city council is hereby authorized to borrow money for any object or purpose in their discretion, and to pledge the faith of the city for the payment thereof, provided the question of borrowing is first submitted to the

legal and qualified voters of the city, a notice of the length of
time, as in city elections, being first given,
stating the manner and object of the loan, and
if a majority decide in favor of said loan, then
the said council shall by ordinance establish a sinking fund
to provide the means to pay any indebtedness created by vir-
tue of the authority granted in this section." As all the pre-
liminary and requisite steps provided for in this section were
taken, it is manifest that the city had express power to bor-
row money, and, as a necessary incident thereto, it could issue
proper evidences of such loan to the person or persons mak-
ing it.

2. BORROWING MONEY.

III. The remaining question is: · Had it authority to
issue, sell, and negotiate long-time negotiable bonds? This
question is not free from difficulty, and the various courts of
the country are not agreed upon the proposi-
tion. The trial court found that the present
city hall " is inadequate and totally unfit for
the purposes for which it is used, and for the needs of the
defendant city; that it is unhealthy and unsanitary; that
the records of the city are in danger of being lost, destroyed,
or stolen; that the object of the city of Cedar Rapids can be
best attained, and its records and valuable papers made safe
and secure, by building a new city hall," and with this con-
clusion we are agreed. The ordinance authorizing the issu-
ing of these bonds provided that " the proceeds of said bonds
shall be used only for the purpose of paying for the erection
of the city hall, to be erected on lots one (1) and two (2)
block thirteen (13), original town, now city, of Cedar Rapids,
Iowa, and only then when directed and ordered by resolution
of the city council of said city. The receipt of the treasurer
of the city of Cedar Rapids, to the purchaser of said bonds,
shall be a full acquittance to such purchaser for the purchase
of said bonds." Section 5: " That there be and is hereby
established a fund to be known as the ' City Hall Fund,' and
the proceeds of the sale of bonds hereby authorized shall be

3. SAME: issuance of negotiable bonds.

credited to the city hall fund, as the expenses of the erection of the city hall shall be paid from said fund."

" Section 6:   The city council shall levy once each year, at the same time, and in the same manner as levying assessments for other taxes for city purposes an assessment upon all taxable property within the city of Cedar Rapids, an amount sufficient in the aggregate to meet the payments of interest on said bonds hereby authorized and in addition thereto an amount sufficient to pay five thousand ($5,000) dollars, per year upon the principal of the bonds hereby authorized, and to pay and retire the bonds hereby authorized as they severally become due and payable.   When such bonds are issued they shall be delivered to the recorder, who shall register the same in a book to be kept for that purpose, countersign them and deliver them to the city treasurer.   Said bonds may be sold at public or private sale, but shall not be sold or negotiated for less than their par value, with accrued interest from their date to the time of delivery thereof.   All moneys received by the treasurer of said city for the sale of said bonds, and on account of taxes levied and assessed for the payment thereof, shall be credited by the treasurer of said city to said city hall fund, and all payments made in the erection of said city hall, and the payments of interest and principal on said bonds, shall be charged to said fund.   If any interest shall become due at any time on any of said bonds, when there is no fund from which to pay the same, the council may make a temporary loan for the payment thereof, which shall be repaid from taxes assessed and collected belonging to said fund."

It appears that the treasurer had contracted to sell the bonds at par, and at the time this action was commenced he was authorized to close the contract.   These matters are referred to because of appellee's insistence that they have some bearing upon the question now before us, in that the indebtedness is created for a permanent improvement which will benefit, not only the present generation, but posterity as well; and

that the funds derived from the sale of the bonds are properly safeguarded. We do not regard these matters controlling, however, for the question, after all, is: "May a municipal corporation issue negotiable bonds without express authority from the Legislature so to do?" That question seems to be foreclosed by our previous cases. See *Heins v. Lincoln,* 102 Iowa, 69; *Witter v. Board,* 112 Iowa, 380; *Swanson v. City of Ottumwa,* 131 Iowa, 540, and cases cited. The question is very fully considered in these cases, and the conclusion reached that, in the absence of express authority, a city has no power to issue long-time negotiable bonds, no matter for what purpose the issue is proposed. We are not disposed at this time to depart from these holdings. Wherever the Legislature has thought it necessary to clothe municipalities with this power it has done so by express statute, and has apparently left nothing to implication. The *Heins-Lincoln* case discusses the very provision of the charter now before us, and the *Witter* case was one where the municipality was securing a permanent site for its court house. No matter what our views regarding the expediency of issuing such bonds, we cannot without changing the rule for this State and overruling the cases hitherto cited approve the issuance by a municipality of negotiable bonds without express authority from the Legislature so to do. It follows that the decree of the superior court must be, and it is, reversed, and the cause remanded for one in harmony with this opinion.— *Reversed* and *remanded.*