**688** **WISCONSIN REPORTS.**

State of Wisconsin ex. rel. Dean vs. Common Council of the City of Madison.

# THE STATE OF WISCONSIN, ex rel. NATHANIEL W. DEAN,

*vs.*

# THE COMMON COUNCIL OF THE CITY OF MADISON.

The act incorporating the city of Madison gives the common council the control of the finances and property of the city; the making of ordinances concerning health; providing for hospital and cemetery grounds, and regulating the burial of the dead. By these provisions full power was given to the council to adopt all necessary sanitary regulations, and to make all suitable provisions for the burial of the dead.

The city of M. was authorized to purchase burial grounds, and if the common council had no money, they could isuse the bonds of the city to pay for the grounds.

City bonds may be constitutionally issued, for the purchase of cemetery grounds, if there be no restriction on the common council in the charter itself.

Section 6, Article 8, of the State constitution restricting the amount of State indebtedness, has no application to municipal corporations.

Where the common council had passed a valid ordinance for the issuing of city bonds, the filling up and dating the bonds is a ministerial act, and a mistake in the date does not render them invalid.

The facts in this case are sufficiently stated in the opinion of the court.

*Orton, Hopkins & Firmin* for the relator.

*Abbott & Clark*, for the respondent.

*By the Court*, COLE, J. This is an application for a peremptory mandamus, to be directed to the common council of the city of Madison, commanding them to cancel, re-consider, and strike out of the tax-roll of said city, for the year

1857, the sum of eight hundred dollars, therein included, to pay the interest on ten one thousand dollar bonds, issued by said city, and bearing date on the first day of February, 1857. It is alleged in the relation, that although the bonds bear date, as above stated, that in fact they were not issued and delivered until on or about the 28th day of March, 1857, and that the same were issued without any legal or sufficient ordinance, passed by the common council of said city authorizing the issuing thereof.

The common council of the city answer, in substance, to this part of the relation, that these bonds were issued to John Wright by virtue of the ordinance passed by that body on the 3d day of January, 1857, (a copy of which ordinance is attached to and made a part of the answer,) as the price and purchase money of the west half of the south-east quarter of section twenty-one, in the town of Madison, which had been before that time, purchased of the said Wright, by the common council, for the purpose of a cemetery for the city, agreeably to the power and authority vested in said common council, by the act of incorporation, and which premises Wright had conveyed to the city for the purposes aforesaid, by a deed bearing date 6th of January, 1857, duly witnessed, acknowledged and delivered to the city on that day. The common council further state, that in consequence of the absence of the mayor, and the sickness of the clerk, and the want of any memorandum or record, they are unable to state the exact day the bonds were executed, but that the day they bear date was not in fact the day of their execution; and they claim that they were legally and properly issued, and that they are binding upon the city, and that the common council in justice and good faith, are bound to provide for the payment of the interest upon them, and that the eight hundred dollars included in the tax roll, which the relator desires to have struck out, is for that purpose.

690 WISCONSIN REPORTS.

State of Wisconsin ex rel. Dean vs. Common Council of the City of Madison.

By the act of incorporation, the common council of the city have the control and management of the finances, and of all property belonging to the city, and have full power to make, enact, establish and enforce such ordinances, for the commerce and health of the city, as they may deem expedient. § 3, chap. 4 of the charter, as found in Session Laws (private) of 1856, p. 90. By subdivision 12 of the same section, they are authorized in express terms, to establish and regulate boards of health, *provide hospital and cemetery grounds,* and regulate the burial of the dead, the return of bills of mortality, and exempt burial grounds set apart for public use, from taxation. There can be no doubt but the legislature, in the charter, attempted to confer upon the common council full power to adopt all such *sanitary* regulations as might be necessary to secure the health of the city, and authorized them to make all suitable provisions for the burial of the dead. The ordinance of January 3d, 1857, provided for the issuing of city bonds to pay for cemetery grounds, which, the answer alleges, had been before that time purchased. The city could not obtain cemetery grounds without paying for them, and if it had not the money to pay down, the common council could only provide for the payment by issuing the bonds of the city. Now, we do not understand that any objection is taken to this ordinance, as it respects form, or substance, other than, it is insisted that the common council could not, under the constitution, whether authorized by the legislature or not, create any public debt against the city, for the purpose of obtaining cemetery grounds, or to accomplish any other object. We have therefore to inquire whether there is anything in the constitution which inhibits the common council from creating this indebtedness. § 6 of Article 8 of the constitution, has been relied upon to show that they could not. That section provides that for the purpose of defraying extraordinary expenditures, the State may

contract public debts; but that such debts shall never in the aggregate exceed one hundred thousand dollars.

It was assumed upon the argument, and probably correctly, that the indebtednes of the State itself, already came up to, if it did not exceed, the constitutional limit, and it was contended that this provision was intended to restrict the aggregate public indebtedness of the State and municipal corporations, in time of peace, to one hundred thousand dollars. We are unable to adopt this construction of the constitution. To our minds the provision was clearly designed to apply to a State indebtedness, and restricts the legislature from contracting a debt on the part of the State, exceeding a hundred thousand dollars. But we do not think it was intended to apply to debts contracted by municipal corporations, towns and counties. The language of the provision is plain, and evidently refers to a debt on behalf of the State, and contracted in its political capacity as such; and cannot, without great violence, be held to apply to the debts of cities and municipal corporations. The debt restricted is a *State debt*, not a county debt or a city debt. By another provision of the constitution, § 3, Art. 11, it is made the duty of the legislature to provide for the organization of cities, and to restrict their power of taxation, assessment, borrowing money, and contracting debts, &c. We cannot discover that the legislature restricted in the charter the power of the common council to contract debts, and some provisions of the charter obviously contemplate that debts will be contracted against the city. Chap. 7, §§ 1 & 3. We therefore conclude that the ten thousand dollar indebtedness, contracted by the city to purchase cemetery grounds, is free from all constitutional objection.

Something was said upon the argument in reference to the time the bonds bore date, and it was stated, either the day they bore date, or the day they were actually issued, was Sunday. The bonds were issued under and by virtue of the or-

dinance of January 3d. As observed, that ordinance was free from all objection; and it was this act of the common council which gave force and vitality to the bonds. The issuing the bonds, filling them up, and dating them, were mere ministerial acts; and if through the carelessness of the clerk, a mistake was made in dating them, we do not think this renders them invalid.

The motion for a peremptory mandamus, must be denied.