STATE OF NEBRASKA, EX REL. CITY OF NORFOLK, V. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

Cities of the Second Class: BONDS FOR SEWERS. Section 39 of chapter 14 of the Compiled Statutes of 1887 confers upon cities of the second class having more than one thousand and less than five thousand inhabitants the right to make regulations to secure the general health of the city, and to construct sewers and to regulate their use. Under this authority it was held that when it became necessary for the city of N. to construct a sewer for the purpose of draining the surplus water from its principal street, it had the power to provide the necessary money to pay for the same, by the issuance of its bonds, such power being incident to and necessary for the carrying out of the authority expressly granted.

ORIGINAL application for mandamus, and submission of the same under Sec. 567 of the civil code.

*F. A. Wigton,* for relator, cited: *Mayor v. Newton,* 23 Ala., 660. *Traver v. Merrick Co.,* 14 Neb., 333. *Lowell v. Boston,* 111 Mass., 463. *Guernsey v. Burlington,* 4 Dill., 374. *Township v. Beasley,* 94 U. S., 313. *Bank v. Chillicothe,* 7 Ohio, 354. *Hubbard v. Sadler,* 10 N. E. Rep., 426. *Mills v. Gleason,* 11 Wis., 493. *State v. Madison,* 7 Id., 688. *Wyandotte v. Zeitz,* 21 Kan., 653. *Williamsport v. Commonwealth,* 84 Penn. State, 487.

*William Leese, Attorney General,* for respondent.

REESE, J.

This action is submitted under the provisions of section 567 of the civil code, the necessary affidavit that the proceeding is in good faith, to determine the rights of the parties, being filed.

The controversy is in relation to certain bonds issued by the city of Norfolk for the purpose of constructing a sewer. The bonds were issued in due form and presented to the auditor for registration and certification. That officer declined to register and certify the bonds, "solely on the ground that cities of the second class, having less than five thousand inhabitants, are not authorized to issue bonds to aid in the construction of sewers as works of internal improvement."

The cause is submitted upon an agreed statement of facts, which is as follows:

"The relator is, and for more than a year last past has been, a municipal corporation duly organized under the laws of Nebraska, a city of the second class, of over one thousand and less than five thousand inhabitants. On the first day of April, 1887, the assessed valuation of the re-

lator was not less than $285,000.  The relator has no bonded indebtedness prior to the bonds herein sought to be registered.   The annexed transcript, marked 'Exhibit A,' which is incorporated into and made a part of this stipulation, is a true and accurate history and transcript of all things connected with and pertaining to the voting of $8,000 of bonds of said relator, on the second day of September, 1887, for the purpose of constructing sewers in said city.   The bonds referred to in said transcript have been duly issued by the relator and submitted to defendant, who is auditor of public accounts, for registration, but defendant refused and still refuses to register said bonds, solely on the ground that cities of the second class having less than five thousand inhabitants are not authorized to issue bonds to aid in the construction of sewers, as works of internal improvements."

The application is for a mandamus to compel the auditor to register and certify the bonds.   That officer, not being satisfied as to his duty, declined to act, and submits the question to this court for its decision.

As the city of Norfolk is a city containing more than one thousand and less than five thousand inhabitants, its authority must be decided under the provisions of the first division of chapter 14 of the Compiled Statutes of 1887, and by the provisions of subdivision 26 of section 39 of that act.   It is under that section that cities of the second class in their corporate capacities are authorized and empowered to enact ordinances, " to construct and keep in repair culverts, drains, sewers, and cess-pools, and to regulate the use thereof."

The question here presented is, does the conferring of this power upon the municipality authorize it to issue bonds for the purpose of aiding in the construction of sewers ?

Upon the argument it was contended, on the part of the respondent, that subdivision 3 of section 69, of the same

chapter, which provides that the expenses of constructing bridges, culverts, and sewers shall be defrayed out of the general fund of the city or village, not to exceed two mills of the levy for general purposes. We think this provision must be held to apply to villages of the character named in section 40 of the same chapter, and containing not less than two hundred nor more than fifteen hundred (1,000 ?) inhabitants, and not to section 39, now under consideration. Therefore, the question of the power to issue bonds must be decided upon subdivision 26, above named.

The proposition submitted to and voted upon by the inhabitants of the city of Norfolk was that of issuing the bonds of the city, in the sum of $8,000, for the purpose of aiding in the construction of a sewer along and beneath Norfolk avenue, by said city, and the necessary grading therefor, and running east on the north side of said Norfolk avenue, to the north fork of the Elkhorn river. It will therefore be seen that the purpose of the issuance of the bonds was to raise money to construct the sewer under this principal street, and for the purpose of grading the street.

By the subdivision of section 39, above referred to, the city is authorized to construct and keep in repair culverts, drains, sewers, and cess-pools.

Considerable attention was given, in the argument of the case, to the proposition that the sewer alluded to was intended as and for the purpose of draining the avenue referred to, and carrying off the surplus water accumulating thereon.

This subdivision confers upon the municipality in express terms the right to construct the sewer, and we think that it may safely be said that, even without statutory authority, the right to improve the street in such a way as to make it passable at all seasons of the year, would be an inherent right vested in the municipality without express statutory authority therefor. But without discussing that proposi-

tion we will simply inquire whether the express authority
to construct a sewer will carry with it an implied authority
to issue bonds to aid in doing so.   The authorities upon
this subject are substantially uniform, some of which will
be briefly noticed.

In the city of *Wyandotte v. Zietz*, 21 Kansas, 653, which
was an action to recover upon certain bonds issued by the
city, denominated sidewalk bonds, it was held that the city
had the power to issue the bonds in payment for the build-
ing of sidewalks, notwithstanding the fact that the money
to be obtained with which to pay the bonds had to be col-
lected as personal tax from the abutting lot owners.   The
act under which the city government had issued the bonds
was to the effect that the city, acting under its provisions,
were authorized and empowered to enact ordinances for the
purpose of opening and improving streets, avenues, alleys,
and making sidewalks within the city.   The right of the
city to pay its moneys for the construction of sidewalks
was not questioned, but it was contended that since the
charter provided that for making and repairing sidewalks
the assessment should be made on lots abutting on the im-
provement, therefore the city could not issue bonds, in the
first instance, for the construction of the sidewalk.   But it
was held that the corporation, being authorized in general
terms to build the sidewalk, without specification of the
manner or means, that it necessarily followed that it could
contract with some person to furnish the material and pro-
vide the labor, to be paid for upon the completion of the
work, and that the city had the power to agree upon the
mode, terms, and time of payment, and to give suitable
acknowledgment of indebtedness by bond, note, or other
contract.

In *Desmond v. City of Jefferson*, 19 Federal Reporter,
483 (Texas), it was held that where the charter of the city
empowered it to organize a fire department and regulate
the same, and adopt such other measures as should conduce

to the welfare of the city, that the city was authorized to purchase a fire engine and issue its negotiable bonds therefor.

In the *State, ex rel. Dean, v. The Common Council of the City of Madison,* 7 Wis., 688, where the charter of the city in express terms conferred upon it the power to establish and regulate boards of health, provide hospital and cemetery grounds, and regulate the burial of the dead, it was held that the city was authorized to purchase the ground, and if necessary the common council could issue the bonds of the city to pay for them. The right to issue such bonds being implied from the authority to purchase the ground.

In *Mills v. Gleason,* 11 Wis., 493, it was held that where the charter of a municipal corporation conferred power to purchase fire apparatus, cemetery grounds, establish markets, and many other things for the consummation of which money would be a necessary means, it would also, in the absence of any positive restriction, confer power to borrow money as an incident to the execution of these general powers.

In *Clarke v. School District No. 7,* 3 Rhode Island, 199, it was held that the corporation might bind itself by an evidence of debt in a negotiable form for any debt contracted in the course of its legitimate business, in the exercise of the authority conferred by law.

*Hubbard v. Saddler,* 10 North Eastern Reporter (New York), 426, was a case where the county authorities were authorized by law to lay out and construct streets and avenues, and provide for the estimate and award of damages, and for the payment of them, and all other charges and expenses necessary to be incurred, by a limited or general assessment; it was decided that the supervisors had the power to issue bonds, running from two to six years, to raise money to pay for the awards and damages made in anticipation of the collection of revenues by the special or general assessment made. The statute conferred the right to issue bonds for the purpose of building bridges, pur-

chasing turnpike roads or toll bridges, buying lumber for town hall and constructing the same, including cemeteries, but not including the payment of damages to real estate by the laying out and construction of streets and avenues thereon. But it is held that practically the town was authorized to incur the debt to the land-owners, it was made responsible for its payment and authorized to provide the necessary means therefor, and therefore the supervisors had the authority to issue bonds to raise the money.

In *Kelly v. The Mayor, etc., of the City of Brooklyn*, 4 Hill, 263, it was held that the municipal corporation might issue negotiable paper for a debt contracted in the course of its proper business, and no provision in its charter or elsewhere merely directing a certain form, in affirmative words, should be considered as taking away this power. And the same was held in *Laws v. Cooley*, 2 Id., 265. See also, upon this same subject, the *Bank of Chillicothe v. The Town of Chillicothe*, 7 Ohio, 354.

In addition to the express powers conferred by the subdivision above quoted, the city had authority, under subdivision VI. of the same section, to make regulations to secure the general health of the city, and doubtless for this purpose the right to construct sewers is also given. If it becomes necessary for the health and convenience of the city to drain the principal streets by the use of underground drains or sewers, the power is given, in express terms, to do so. To say that this power existed but that the means to make it effective had been withheld, would simply destroy the authority and nullify the legislative grant.

We are fully aware of the necessity for great care in the exercise of the right to borrow money by municipal corporations, and that the power so to do should not be held to have been conferred except when expressly given or when absolutely necessary to carry out and make effective the power expressly conferred. But we think the present

case falls clearly within the latter class, and that the bonds were legally issued.

The writ will therefore be allowed.

WRIT ALLOWED.

THE other judges concur.