Minshall, J.
On May 11, 1886, the legislature passed an act known as the “Taylor Raw,” conferring authority upon the councils of cities of the first grade, of the second class, “to cause any .of the streets or avenues or parts thereof of said city to be paved with granite or other stone block, asphalt or other permanent material, * * * and to provide that said improvement shall be paid for and assessed upon the property abutting on the same in accordance with the various provisions of this supplement and in accordance with the various provisions of law enacted, or hereafter enacted, applicable thereto, and not inconsistent with this act,” and, for the payment of the cost and expense, further authorized the issuing of the bonds of the city, to be paid from assessments on the property authorized to be assessed, “to extend over a period of at least eight years, to be provided in the ordinance directing the improvement.”
The act was amended March 21, 1887, by a provision that section 2270, Revised Statutes, should not apply to improvements under this act. 83 Ohio Raws, 140; 84 Ohio Raws, 176. On March 26,1888, the city council of Columbus—a city of the first grade, of the second class—(State v. Wall, 47 Ohio St., 499), having taken the necessary preliminary steps, passed an ordinance for the improvement of Town street from Parsons avenue to Parsons’ east line, by surfacing the roadway with asphalt, and resetting the curb, the payment of the cost of the improvement by the issuing of bonds, and for the assessment of an amount to meet the bonds equally upon the property “fronting or abutting” on the improvement “by the foot front.”
On May 5, 1888, the action below was commenced by the plaintiff, George M. Parsons, in the court of common pleas, to enjoin the making of the improvement proposed *466 by the ordinance, on the ground that the improvement was not authorized by the law—that part of the street having, as averred, been already improved by himself in a substantial manner, with “round cobblestones,” laid in sand, and pounded solid, on a foundation that had been suitably prepared. A demurrer having been sustained to the petition, it was amended by making various constitutional objections to the validity of the act of the legislature, to which a demurrer was also sustained. A supplement was then filed, setting up the completion of the work, the making of the assessments on his property, and asking that their collection be enjoined. A demurrer to this was also sustained, and an appeal taken to the circuit court, where the same rulings were made on the different pleadings, and the petition dismissed. These rulings are assigned for error here.
1. It seems very clear to us that the improvement that had been made in Town street by the plaintiff prior to the act authorizing cities of the grade and class of Columbus to improve any of their streets and avenues, or parts thereof, with granite or other stone-blocks, or with asphalt or other permanent material, did not preclude the city from so improving the part of Town street that had been improved with cobblestone by the plaintiff. So far as appears from the petition, the improvement made by the plaintiff was a voluntary act on his part, and could not, therefore, estop the city, through its council, from making an improvement of the character provided for by the act of May 11, 1886, and assessing the cost thereof on the property abutting on the improvement. However substantial this improvement may have been, it was for the council to determine, in the exercise of the authority given by the act, whether it ansswered the requirements of the public at this time, and whether the street should be improved with the material, and in the manner, authorized by the act. It' cannot be allowed that one property holder on a street can, by voluntarily making an improvement in the street, suitable to his own convenience, preclude the city from improving it in a manner required by the wants of the public and others upon the same street. The control of the streets is placed in the city, to be exercised for the public convenience; and no cit *467 izen can, by any act of his own, impair the authority so conferred.
2. The ground on which the validity of the act of May 11, 1886, is principally challenged, is that it contains no restriction on the power of assessment conferred by it, as required by the constitution. That instrument provides (article 13, § 6) that: “The general assembly shall provide for the organization of cities and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such powers.” Many of the other states have provisions in the fundamental law of each, substantially, if not identically, the same as our own; and the language of our own seems to have been copied from that of the state of New York. The injunction, it will be observed, applies as well to the power of taxation, of borrowing money, of contracting debts, and loaning their credit, as to the power of assessment, and is no more imperative in the one case than in the others. It has engaged the attention of some of our ablest courts and judges, and all, with a remarkable concensus of opinion, have held that, while it is a most salutary provision, it is addressed to the conscience and judgment of the legislature, and is not a subject for “judicial correction.”
Judge Dillon, after quoting the language in the constitution of the state of New York, and observing that it is substantially contained in the constitution of several of the states, says: “This obviously enjoins upon the legislature the duty of providing suitable and proper restrictions upon the enumerated powers; but in what these restrictions shall consist, and how they shall be imposed, are subjects left to the discretion or sense of duty of the legislative department, with the exercise of which the courts cannot interfere.” 1 Dill. Mun. Corp., § 50. Judge Cooley adopts the same construction, his language being that: “These requirements, however, impose an obligation upon the legislature, which only its sense of duty can compel it to perform. It is evident that if the legislature fail to enact the restrictive legislation the courts have no power to compel such action.” Cooley, Const. Rim. 636. See, also, Cooley, Tax’n, *468 845. The following are some of the cases in the other states in which this provision in the constitution of each has been construed, and held not to confer any power of judicial correction. Bank of Rome v. Village of Rome, 18 N. Y., 38, affirmed in re Village of Rhinebeck, 82 N. Y., 621; People v. Mahaney, 13 Mich., 482, opinion by Cooley, J. ; Hines v. City of Leavenworth, 3 Kan., 186; City of Newton v. Atchison, 31 Kan., 151, 1 Pac. Rep., 288; State v. City of Madison, 7 Wis., 688; Weeks v. City of Milwaukee, 10 Wis., 242.
In Foster v. City of Kenosha, 12 Wis., 617, the Supreme Court of Wisconsin has been regarded as holding a somewhat opposite view. But all that the court there decided is that the legislature cannot confer an unlimited power upon a city to raise monejr by taxation; it must be limited to municipal purposes, and because, in the judgment of the court, the statute it was then considering conferred such unlimited powers, it was held invalid. The case stands alone, and has been virtually overruled by the Supreme Court of the United States in City v. Lamson, 9 Wall., 477, on the ground that it is inconsistent with the previous decisions of the same court, cited supra. 1 Dill. Mun. Corp., § 50.
But, so far as the case before us is concerned, we need not go beyond the former decisions of this court. Hill v. Higdon, 5 Ohio St., 243; Railroad Co. v. Connelly, 10 Ohio St., 159; Maloy v. City of Marietta, 11 Ohio St., 636; Walker v. City of Cincinnati, 21 Ohio St., 14, 46.
It cannot be said that the act in question contains no restrictions upon the power granted to cities of the first grade, of the second class. The power granted is to improve their streets and alleys in a certain manner, and to assess the cost of the improvement upon property abutting upon the same in accordance with its provisions, and “the various provisions of law now enacted * * * and not inconsistent with this act.” Now, there are manjr provisions in the law regulating “ assessments in general,” not inconsistent with the act, and therefore applicable to improvements made under it. The necessity of the improvement, when deemed necessary, must be declared by resolution, and twenty days’ *469 written notice of its passage must be given to owners of property abutting upon it, and the resolution must then be published for not less than two weeks in some newspaper of general circulation in the corporation. Section 2304, Revised Statutes. As the cost of the improvement is, by the act, to be assessed upon “abutting property,” no improvement can be made under it “ without the concurrence of two-thirds of the whole number of the members elected to the council,” unless two-thirds of the owners to be charged petition in writing therefor. Section 2267. And for a like reason, by section 2264, the council must, by ordinance, set forth specifically the lots and lands to be assessed, which, by section 1695, must be published in some newspaper of general circulation in the corporation before going into effect. By the act itself, assessments are confined to “ abutting property;” the bonds issued to pay for the improvement must be made, by the ordinance directing the improvement, to extend "over a period of at least eight years;” and the assessments shall be made payable in equal installments to meet the bonds. It then appears that the power of assessment conferred by this act is subject to many restrictions contained in the act itself, and in the general law on the subject of assessments, that are applicable to it. They may not be as adequate to the prevention of abuses as they should be, but such inadequacy “lays no foundation for judicial correction.” Hill v. Higdon, supra. In Maloy v. City of Marietta, the validity of an assessment for a street improvement under the towns’ and cities’ act of May 3, 1852, and its amendments, was questioned on the ground that the legislature, in granting the power, had not so restricted it as to prevent abuse; the principal objection being that it contained no limitation upon the amount that might be assessed. Judge Peck, in delivering the opinion, doubting whether, if the act conferred an unrestricted power, courts could for that reason hold the statute invalid, and citing the language of Judge Ranney in Hill v. Higdon, said: “Be this as it ma3?, the section, while it imposes the duty, leaves to the legislature the power to determine the mode and manner of the restriction to be imposed.” And the requirement of the act, that no improvement, the costs of which *470 are to be assessed upon the owners of abutting propertjq shall be made without the concurrence of two-thirds of the members elected to council, or unless two-thirds of the owners to be charged petition therefor in writing, was held to be a restriction; and, whether adequate or not, the court said, “Further remedy must be left where, we conceive, the constitution has placed it—in the prudence and sagacity of the law-making power.” To this we may add what is said by Judge Scott in Walker v. City of Cincinnati: “It is very clear that this constitutional mandate cannot be enforced according to judicial discretion and judgment. In the very nature of the case, the power which is to impose restrictions so as to prevent abuse must determine what is an abuse, and what restrictions are necessary and proper.”
Importance is attached to language used by Judge White in Cincinnati v. Oliver, 31 Ohio St., at page 374, “That the granting of the assessment, and the duty of restricting its exercise so as to prevent abuse, are made inseparable by the express provision of the constitution.” This is not questioned. But as to where the duty rests, and whether subject to judicial correction, were not presented nor considered in the case.
It is also claimed that Maloy v. City of Marietta, should be overruled, as wrongly decided, and inconsistent with Chamberlain v. Cleveland, 34 Ohio St., 551. We do not think that it was wrongly decided', and the claim that it is inconsistent with Chamberlain’s case is a misapprehension of that case. The question there considered and passed on by the court was not the validity of the statute, but the validity of the proceedings had under it. The proceedings were held invalid for want of conformity to the law, in apportioning the assessment, and the cause remanded for the making of a new one.
Other objections have been made to the validity of the statute; but, after carefully considering them, we find none that would warrant the court in holding the law to be unconstitutional.

Judgment affirmed.

Dickman and BuriíET JJ., dissent from the first and second propositions of the syllabus.