MARY M. PAINTER v. CITY OF NORFOLK.

FILED JUNE 19, 1901. No. 9,833.

Commissioner's opinion, Department No. 3.

1. **Contract by Ordinance: INTEREST ON BONDS: CERTIFICATE OF CLERK: ULTRA VIRES.** A city, by ordinance, contracted with a corporation that in consideration that the latter should construct and maintain within the city a system of water-works, the city would pay to it hydrant rentals to the amount of $3,000 per annum, and that in case the company should issue mortgage bonds upon its works, the city clerk should indorse upon each bond a certificate to the effect that in lieu of such rentals the

city would pay to the trustee or trustees named in the instruments annual interest upon said bonds to the amount aforesaid. The company issued seventy-five such bonds for $1,000 each, payable twenty-five years after date, with semi-annual interest at the rate of six per cent. per annum, evidenced by interest coupons attached, and the clerk indorsed upon each of said bonds a certificate that the city would pay the interest thereon as it should mature. *Held*, That the certificate was in excess of the authority purported by the ordinance to be conferred upon the clerk and was void.

2. **An Ordinance Against Statute Void.** In the case above stated, the city reserved the right to purchase the works, and agreed, in such case, to assume whatever outstanding bonded debt should, at the time of the purchase, exist thereon, and shortly after the completion of the works did, in fact, purchase them. The statute provided that no bonded debt should be incurred by the city for the construction or purchase of a system of waterworks unless the same should first be authorized by a popular vote. No such vote was taken, and the guaranty contemplated by the ordinance would, if valid, have bound the city for the payment of a fixed sum annually for hydrant rentals, irrespective of a statute which limited such expenditures to the proceeds of a specified annual levy on the taxable property of the city as disclosed by the public assessment records. *Held*, That the provisions of the ordinance with respect to the assumption of the bonded debt and the guaranty of interest payments thereon was in violation of the statute and void.

ERROR from the district court for Madison county. Tried below before ROBINSON, J. *Affirmed.*

*Powers & Hays,* for plaintiff in error.

*Burt Mapes, contra.*

AMES, C.

A general demurrer to the petition of the plaintiff was sustained by the district court for Madison county, and the plaintiff electing to stand upon her exception, a judgment of dismissal and for costs was rendered against her. The judgment is brought here for review by a petition in error. The claim of the plaintiff had its origin in an ordinance enacted by the mayor and council of the city of Norfolk, which, with the exception of dates, names and

amounts, and perhaps some minor matters not material
in this controversy, is admitted to be a literal copy of the
ordinance set forth at large in the opinion of *State v.
Mayor and Council of Crete,* 32 Nebr., 568. It is unneces-
sary to consume time or space in reproducing the docu-
ment here. If the validity of this enactment was not sup-
posed to have been conclusively established by a series of
decisions by this court, beginning with that in the case just
cited and ending with *Lincoln Land Co. v. Village of
Grant,* 57 Nebr., 70, the writer would heartily agree with
the opinion of Judge SULLIVAN in the latter named case,
that the ordinance violates and ignores a multitude of
statutory provisions expressly designed to limit and re-
strain municipal authorities within reasonable bounds and
to guard and protect the taxpayers against the conse-
quences of improvidence and fraud.

Assuming the validity of the ordinance, it becomes nec-
essary to determine the legality of the instruments sued
upon in this action. Section 12 of the Norfolk ordinance
contains the following stipulation: "In the event that the
grantee shall issue mortgage bonds secured by mortgage or
deed of trust upon its water-works together with its lands,
machinery, pipes, outfits, rights, privileges and franchises,
a sufficiency of the hydrant rentals payable by the city of
Norfolk under this ordinance to discharge the interest
upon such bonds as it will mature from time to time to be
paid by the city of Norfolk to the trustee or trustees of
such bonds, to the extent of $3,000 per annum, when such
hydrant rentals are earned by the grantee and are payable
by the city, and such sums shall be paid while interest
on such bonds remain due and unpaid, and the city clerk
is hereby authorized and instructed to sign a certificate
on the back of said bonds to that effect and to affix the seal
of said city to such certificate and payment so made to
trustee or trustees shall be made exclusively to pay inter-
est upon said bonds so long as the same remains due and
payable, and the amount remaining after the interest on
the bonds shall have been discharged shall be paid over to

said grantee, and in the event that the city should elect to purchase the works as herein provided for, the payment of such bonds, if any there be, shall be assumed by said city and the face value of said bonds with accrued interest, if any, shall be deducted from the purchase price of said works."

The petition alleges the acceptance in writing of the terms and conditions of the ordinance, by A. L. Strang, the grantee therein, and the execution by him of a bond as required by the ordinance, and that he commenced and completed the construction of a system of water-works which was in full compliance with the terms of the grant and which was duly approved and accepted by the mayor and council. Afterwards, Strang conveyed the works to the Norfolk Water-Works Company, a corporation, and, as alleged in the petition, the company, on the 15th day of January, 1890, "executed, as contemplated in section 12 of said ordinance, its five negotiable mortgage bonds, numbered, respectively, 30, 31, 32, 33 and 34, in the sum of $1,000 each, payable twenty-five years from the date thereof, with interest thereon at the rate of six per cent. per annum; the interest payable semi-annually as evidenced by the fifty coupon interest notes of $30 each attached to said bonds, payable on the first days of January and July of each year until the maturity of said bonds." The petition alleges that the plaintiff became the owner for value and before due of the coupons maturing during the years 1891 to 1895, both inclusive, and on January 1. 1896, which were attached to the above mentioned five bonds, and alleges that the coupons have become and remain overdue and unpaid, and prays judgment against the city for their amount and interest. The coupons are without indorsement and are in the following form:

"EXHIBIT A.—Coupon.

"$30.00.                                                    No. 6.

"NORFOLK WATER-WORKS COMPANY

Will pay to bearer thirty dollars on the first day of January, 1893, at the office of the Farmers Loan & Trust

Company in the city of New York and state of New York, on the surrender of this coupon being the interest due at that date on bond.

"No. 31.                    A. L. STRANG, *President.*"

On each of said bonds is an indorsement as follows:

"STATE OF NEBRASKA, ⎱ ss.
  MADISON COUNTY,   ⎰

"I, the undersigned clerk of the said city of Norfolk, do hereby certify that the interest on the within bond, as it shall mature from time to time, will be paid by the said city of Norfolk, to the within named trustee, out of such hydrant rentals as shall be earned from and payable by the city of Norfolk pursuant to the ordinance granting the franchise for the building of the within named Norfolk Water-Works, and that such hydrant rentals pursuant to such ordinance are to be first applied to pay the interest on this and seventy-four other bonds of like tenure and effect as it shall become due or remain due and unpaid.

"Witness my hand and the seal of said city, this 28th day of January, A. D. 1890.

[SEAL.]                    "W. GERECKE, *City Clerk.*"

The petition also contains the following allegation:

"After the completion of the water-works aforesaid, and in the year 1889, and annually thereafter, the said city levied and collected a tax upon the taxable property therein for the purpose of paying the interest on said bonds as provided in the said ordinance until February, 1894, when the city became the purchaser of the water-works and all the property, real and personal, and franchise belonging thereto, from the Shickle-Harrison & Howard Iron Company, the then owners of the same; and in order to protect itself in the payment of said bonds, the city exacted and required of said Shickle-Harrison & Howard Iron Company, the following bond and undertaking, which was given, to-wit:

"'Whereas, The Shickle-Harrison & Howard Iron Company, has sold to the city of Norfolk, Madison county, Ne-

braska, the property, real and personal, and all rights, privileges and franchises formerly belonging to the Norfolk Water-Works Company, a corporation; and whereas, the said city granted certain franchises to said Norfolk Water-Works Company mentioned in ordinance number 69 of said city; and whereas, by certain provisions of said ordinance, said city, should it acquire title to said water-works property in the manner provided therein agreed to assume any outside standing bonds of said company; and whereas, said Shickle-Harrison & Howard Iron Company acquired title to said property by foreclosure of the bonds mentioned in said ordinance:

" 'Now, therefore, the Shickle-Harrison & Howard Iron Company agree to hold the said city harmless to the extent of $15,000 by reason of any liability under said ordinance incurred by said city in the purchase of said water-works property from Shickle-Harrison & Howard Iron Company.

" 'Dated February 16, 1894..

[SEAL.]        " 'SHICKLE-HARRISON & HOWARD IRON CO.,
                      " 'By THOMAS HOWARD, *President.*

" 'Attest: THOMAS E. GALLAGHER, *Secretary.'* "

The clerk's indorsement is recited in the petition and is a part thereof. Even if it must be assumed, which, notwithstanding the authorities above cited, I still hesitate to believe, that the city authorities may, in the indirect way contemplated by this ordinance, create a bonded municipal debt without a popular vote in direct contravention of the very section of the statute under the assumed authority of which the ordinance was adopted, it is still to be established that the city clerk is empowered to obligate the city in the absence, or in excess, of authority conferred upon him either by statute or by ordinance. The clerk's certificate is not negotiable in form or otherwise; it purports to have been executed pursuant to a specified ordinance and assumes to bind the city for the amount of the annual payments of interest by way of hydrant rentals to the amount of $4,500, while the ordinance mentioned

limits the amount of such payments to $3,000 a year.
Whatever, therefore, may be said about the ordinance, the
clerk's certificate is, as respects any contractual character
it may have been intended to have, absolutely void.   The
case is analogous to the familiar instance of the issuance
of municipal bonds in excess of a specified percentage of
the assessed valuation of the city as disclosed by a public
record.   The law has been too long and too well settled to
require the citation of authorities to the effect that such
bonds are, as to their entire issue, utterly void.   If the
principle that public officers are agents with limited pow-
ers and that persons dealing with them must see to it, at
their peril, that they do not exceed their authority, the
same conclusion must be reached with reference to this
certificate, which, by its own terms, directs attention to
the ordinance from which alone it could derive any
validity.

If the plaintiff has any right of action against the city,
it arises not upon this certificate or upon the coupons, but
out of the ordinance itself, as a participant in the fund of
$3,000 per year which the city thereby undertook to pay
to the trustee or trustees for her benefit.   We have not the
trust mortgage before us, but it is probable that the right
of action against the city for delinquency in this respect
is vested in the trustee alone, but whether it so expressly
stipulated or not, payment of the interest to the trustee
would discharge the liability of the city therefor.   Whether
such payment has or has not been made the petition does
not show, but it is alleged that after the completion of the
works and until February, 1894, when the city purchased
the property, an annual tax of sufficient amount was lev-
ied and collected and it may reasonably be inferred that
the same was devoted to the purpose intended.   If not, or
if, as to subsequent years, the city is bound to continue
the payment of hydrant rentals for the use of its own water
system and has or has not continued so to do, and if, in any
such case, a right of action has accrued to the holders of
coupons, it still does not follow that the plaintiff is en-

titled to recover the full amount of the instruments sued
upon. Her recovery could not, in any event, exceed two-
thirds of that amount, because a recovery by her would not,
in such case, discharge the equal liability of the city to the
holders of coupons attached to the remaining seventy
bonds. The plaintiff, in order to recover, must allege and
prove at least the number of outstanding coupons and the
years and extent of the city's delinquency and the holders
of other coupons must be permitted to intervene so that
the court may be in position to determine the entire
amount of the liability of the defendant, and, if necessary
or expedient, appoint a trustee to take charge of and to
distribute the funds so that upon payment of the amount
adjudged against it its obligations will be finally and ef-
fectually discharged. In short, as has been already said,
the plaintiff's right of action, if she has any, which to my
mind is extremely doubtful, is not upon the coupons or
clerk's certificate at all, but upon the contract created by
the ordinance, and the petition falls far short of stating
facts sufficient to constitute a cause of action upon the
latter instrument. But there is, to my mind, a more vital
objection to these instruments, considered as obligations
of the city, which has as yet been but barely mentioned.
The very section of the statute, under the assumed author-
ity of which this ordinance was adopted and this contract
entered into, contains a proviso to the effect that the city
may borrow money and issue bonds for the purpose, and
levy and collect a general tax in the same manner as other
municipal taxes may be levied and collected, for the pur-
chase of steam engines, and for the purchase, erection or
construction and maintenance of such water-works, or to
pay for water furnished such city or village under con-
tract, to an amount not exceeding seven mills on the dol-
lar in any one year on all the property within such city
or village as shown and valued upon the assessment rolls
of the assessor of the proper precinct or township, in addi-
tion to the sum authorized to be levied under subdivision
1 of this section, and all taxes raised under this clause,

26

shall be retained in a fund known as "Water Fund"; Provided further, that no such money shall be borrowed or bonds issued, unless the same shall have been authorized by a vote of the majority of the electors of such city or village to that effect. The bonds shall be bonds of the city called "Water Bonds," to become due in twenty years from the date of issue, but payable any time after five years, drawing seven per cent. interest per annum, payable annually. No such vote is alleged to have been had in this instance, and yet the ordinance pretends to authorize the bonding of the works and the guaranteeing of the interest by the city to the extent of $3,000 per year and the assumption by the city of the obligation to pay the principal of the bonds in case of a purchase by it of the works. As a matter of fact, it seems that the works were bonded for $75,000, and that within five years after they were constructed the city did buy, or attempt to buy them and, as it is contended, thereby assumed liability for the bonded debt. It is not stated what the assessed valuation of the city is or at any time has been. If this transaction can be upheld, the statutory limitations upon the power of the city to borrow money and issue bonds and expend money for hydrant rentals are practically nullities. If such is the law, there is no reason why the construction of the works, their purchase by the city and the assumption of the bonded debt might not have been contemporaneous acts. Nor is there any reason why the amount of the bonded debt and of the hydrant rentals, which are to be paid by way of meeting the semi-annual interest charge, might not have been as much larger as the cupidity of the grantee and the "discretion" of the mayor and council would have warranted. The bondholder is, indeed, a favored individual of his class, because he may not only, like other creditors of the city, resort for payment to the general fiscal resources of the municipality, but he has in addition thereto a specific lien upon the very property which the city incurred the liablity for the purpose of procuring.

A case is conceivable in which the mortgage trustee

would, by means of foreclosure and sale, deprive the city of the works for the satisfaction of a fraction of the mortgage debt and afterwards compel the taxpayers to discharge the residue out of the public revenues. In fact, it is indicated by the recitals of the above quoted bond of the Shickle-Harrison & Howard Iron Company, that precisely this state of affairs exists, and precisely this attempt is being made in the case at bar. In my opinion, the provisions of the ordinance with respect to guaranteeing the payment of interest by way of hydrant rentals, and with respect to the issuance by the water company of bonds and the assumption of liability therefor by the city in case of its purchase of the works, are absolutely void, as in violation, not of the spirit only, but of the very letter of the statute. It is immaterial that the city has received a bond executed by a foreign corporation of limited powers and unknown responsibility, conditioned to partially indemnify it against liability upon these bonds, no such liability in fact existing. If the city shall not be compelled to pay obligations which it did not lawfully incur, it will not stand in need of indemnity.

The judgment of the district court should, in my opinion, be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.