STATE, EX REL. CITY OF O'NEILL, APPELLEE, V. GEORGE W. MARSH, AUDITOR, APPELLANT.

FILED OCTOBER 30, 1931. No. 28069.

*C. A. Sorensén, Attorney General,* and *George W. Ayres,* for appellant.

*W. J. Hammond, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Paine, J.

This was an action in mandamus, brought in the district court for Lancaster county by the relator, the city of O'Neill, to compel the respondent, the auditor of public accounts of the state of Nebraska, to register $7,000 of municipal bonds of the city of O'Neill, Nebraska, which bonds are called "O'Neill fire department bonds," which bonds the city issued to procure fire fighting equipment. The district court found that the relator could legally issue the bonds presented, and that it was the duty of the state auditor to register them, and directed him so to do, and the respondent has appealed the case to this court.

An election was legally called, upon proper notice given, and a sufficient majority voted in favor of the issuance of the bonds, which were issued in pursuance thereof. When presented to the state auditor, with a history of all proceedings, he refused to register them.

The relator bases its authority upon sections 17-101, 17-121, and 17-149, Comp. St. 1929. The first section declares, among other things, that cities containing a population of more than 1,000 and less than 5,000 shall be cities of the second class, and the second section authorizes such cities to enact ordinances for the following purposes, and in the third section above cited it provides that one of the purposes is "to procure fire engines, hooks, ladders, buckets and other apparatus." It is not denied that it was necessary for said city to purchase the fire equipment and that no money was available.

It is claimed by the relator and appellee that this court twice held in 1888 that cities of the second class have the power to issue bonds to enable them to carry out the powers granted. In *State v. Babcock,* 22 Neb. 614, the state auditor declined to register bonds presented by the city of Norfolk because cities of the second class were not authorized to issue bonds to aid in the construction of sewers, and the closing paragraph in this opinion reads as follows: "We are fully aware of the necessity for great care in the exercise of the right to borrow money by municipal corporations, and that the power so to do should not be held to have been conferred except when expressly given or when absolutely necessary to carry out and make effective the power expressly conferred. But we think the present case falls clearly within the latter class, and that the bonds were legally issued."

In the case of *State v. Babcock,* 25 Neb. 278, the state auditor, not feeling certain as to his duty, declined to register bonds presented by the city of Kearney for the purpose of erecting a building for the fire department, city officers, police department, and for a city jail, and an original action in mandamus was brought in this court and the auditor was compelled to register them for the same reasons set out in the foregoing case.

The relator does not contend that it has any express power to issue the bonds in question, and the respondent contends that in Nebraska no municipal corporation can now legally issue its municipal bonds except as authority for such issue is expressly conferred upon it by section 17-441, Comp. St. 1929, which expressly forbids cities of the second class to borrow money or to issue bonds except under the exact terms as authorized therein.

The respondent admits that in 1879 an act was passed (Laws 1879, p. 193) which permitted cities of the second class to enact ordinances to provide the city with water and procure fire fighting equipment, and that said act gave no express authority to issue bonds therefor; that in 1887 an act was passed (Laws 1887, ch. 12, sec. 1, subd. XV) which in express terms authorized cities of the second class

to issue bonds for such purposes under certain restrictions, and that the act has been amended several times, the last amendment being in 1925 (Laws 1925, ch. 41), and as amended said section 17-441 now reads in part as follows: "To provide for the purchase of steam engines or fire extinguishing apparatus and for a supply of water for the purpose of fire protection and public use. * * * Such cities or villages may borrow money or issue bonds for the purpose not exceeding seven per cent. (7%) of the actual value of the taxable property within said city or village according to the last preceding assessment thereof, for the purchase of steam engines or fire extinguishing apparatus, and for the purchase, erection and construction and maintenance of such water-works, mains, * * * Provided, no such money shall be borrowed, or bonds issued, unless the same shall have been authorized by three-fifths of the legal votes of such city or village, cast for and against the proposition at an election held for the purpose, notice of which election shall have been given by publication in some newspaper published or of general circulation in such city or village for at least two weeks prior to the date of such election. The bonds shall be the bonds of such city or village and called 'water bonds' to become due in twenty (20) years from the date of issue, but payable any time after five years, drawing interest not exceeding six per cent. (6%) per annum, payable semi-annually, or annually."

This statute requires that bonds issued as therein provided should be called "water bonds" and become due in 20 years from the date of issue, with optional payments after five years, and draw interest at not exceeding 6 per cent. The bonds tendered to the auditor in this case by the relator are called "O'Neill fire department bonds," instead of "water bonds," and are in the denomination of $500 each, bearing 4½ per cent. interest, but are all due seven years from their date, with certain options prior thereto, and not due in 20 years, as the statute provides.

It is insisted by the relator that, if cities of the second class are given the right to provide by ordinance for the

purchase of fire fighting equipment, such cities must have implied power to issue bonds to raise money to purchase such equipment; but in *Brinkworth v. Grable,* 45 Neb. 647, it was held: "It is settled law that a municipal corporation has no power to issue its bonds in aid of a work of internal improvement unless expressly authorized by statute to do so." This statement is cited with approval in *Village of Grant v. Sherrill,* 71 Neb. 219, which cites *Jury v. Britton,* 15 Wall. (U. S.) 566, and adds: "It has been said that it is one thing to have the power to incur a debt and to give proper vouchers therefor, and a totally different thing to have the power of issuing obligations unimpeachable in the hands of third persons. *Claiborne County v. Brooks,* 111 U. S. 400. Thus the power to build a courthouse does not include the power to issue municipal bonds in payment therefor."

In *State v. Babcock,* 24 Neb. 640, in refusing to compel the state auditor to register bonds of the city of Sutton, the court sets out the requirements that they must be styled "water bonds" and mature in 20 years, but be payable any time after five years, and said: "As the bonds were issued under statutory power, the statute is the measure of the authority of the city council in the premises."

Rose, J., in *State v. Marsh,* 104 Neb. 159, approves the statement: "It is a general principle of law that municipal bonds must be issued in conformity with the statute in force at the time of issuance."

In *Painter v. City of Norfolk,* 62 Neb. 330, Commissioner Ames uses this language: "If this transaction can be upheld, the statutory limitations upon the power of the city to borrow money and issue bonds * * * are practically nullities."

In *Swanson v. City of Ottumwa,* 131 Ia. 540, we find the statement: "Even where power to borrow money is expressly given, we have held that there is no implied authority to issue negotiable bonds to accomplish that end."

The supreme court of Iowa has quite recently said: "Authority of municipality to issue negotiable bonds must be found in express language of statute and cannot be im-

plied." *Muscatine Lighting Co. v. City of Muscatine,* 217 N. W. 468 (205 Ia. 82)'.

Municipalities cannot issue bonds or other like securities unless power to do so is conferred by legislative authority, or clearly implied, and any reasonable doubt as to the existence of such power should be resolved against its existence. *Kaw Valley Drainage District v. Kansas City,* 119 Kan. 368; *Hall v. Hood River Irrigation District,* 57 Or. 69.

Section 17-441, Comp. St. 1929, provides clearly how the bonds in question must be issued, the exact terms as to name and maturity; and the early authorities relied on by the relator, when there was only an implied power in cities to issue such bonds, do not govern when by amendments the legislature has now provided certain requirements to make such bonds legal.

The bonds presented to the state auditor for registration lack much of complying with these statutory requirements. Why should this court at this time hold that any kind of bonds may be issued under implied power, when definite, positive power to issue such bonds is expressly given?

In our opinion the rule prevailing in the majority of states at this time, as well as in the later decisions of the United States supreme court, may be expressed as follows: As a municipal corporation has no power to issue bonds except by legislative permission, the legislature, in granting permission to a municipality to issue its bonds, may impose such conditions as it may choose, and unless the conditions are complied with the issue is unauthorized and the bonds are invalid. See 19 R. C. L. 992, sec. 288; *Hill v. Memphis,* 134 U. S. 198.

For the reasons given herein, judgment is reversed, and proceedings dismissed.

REVERSED AND DISMISSED.